Ricks, adm'r, *vs.* Dillahunty.

RICKS, adm'r, *vs.* DILLAHUNTY.

1. The seller of personal chattels impliedly stipulates that the article sold is his own, and that he will indemnify the buyer for the loss, if the title is in another person.

2. But a sale by an executor, administrator, or other trustee, forms an exception to the rule, and does not imply a warranty of title, unless there be fraud, or perhaps in some instances, gross negligence.

3. To entitle the purchaser to recover for any defect in the quality or soundness of the article or property sold, except under special circumstances, he must prove that the seller warranted the thing sold to be good and sound, or that he concealed or fraudulently represented its qualities.

4. If the warranty be express, it will extend to all defects, whether known or unknown, to the seller, unless they be such as a common purchaser might have observed at the time of the sale.

5. No particular form of expression is required to constitute a warranty. It generally depends upon the terms, and the sense in which they are understood by the parties, whether they amount to a warranty, or were a mere expression of the seller's opinion.

Ricks, adm'r, *vs.* Dillahunty.

6. It is not necessary for the indemnity of the purchaser, that he should in all cases require an express warranty, as in some cases the law will imply it ; as, in case of one who sells provisions—a merchant abroad who fills an order for his customer, and one who sells by sample.

7. A mere representation or expression of opinion, will not render the seller liable, unless made with a knowledge that they are false.

8. The purchaser of personal property cannot defend against the purchase money, by showing that the property was of no value ;—the seller making no warranty and practising no fraud.

9. A suppression of the truth also to the buyer's prejudice, will render the seller liable.

10. A contract for the sale or hire of a slave, is governed as far as the nature of the subject will allow, by the same principles that govern other contracts of sale.

11. The hirer of a slave for *a definite period,* becomes a purchaser for the *time agreed on,* and if the slave die before its expiration, the loss must be borne by the hirer, and he cannot resist a recovery, by shewing that the act of God prevented him from deriving a profit from the contract, unless by its terms, it provides for such a contingency.

12. (It seems, however, that in Virginia and South Carolina, the owner is not entitled to recover hire, for the time intervening between the death of the slave, and the expiration of the term for which he was hired, but the hire must be apportioned.)

13. (In South Carolina, a sound price, contrary to the English common law, implies a warranty of soundness, by the seller of a personal chattel.)

Error to the Circuit court of Lauderdale.

Debt, on a note given for the hire of negroes, tried before *Lane,* J.

The plaintiff in error, declared in debt against the defendant in the Circuit court of Lauderdale, on a writing, of which the following is a copy :

Ricks, adm'r, *vs.* Dillahunty.

"$348. On or before the first day of January next, we, or either of us, promise to pay Abraham Ricks, administrator of Isaac Ricks, the just and full sum of three hundred and forty eight dollars, for the hire of three negro men; namely, Dick Lockhart, Willis and Godfrey. Witness our hands and seals, this the 13th day of February, 1834.

"HARVEY DILLAHUNTY,
"AMOS JARMAN."

The defendant pleaded, *in short*—

1. A failure of consideration;
2. A want of consideration;
3. Fraud.

On each of which pleas, issues were taken and submitted to the jury.

From a bill of exceptions taken at the trial, it appeared that defendant took possession of the negroes mentioned in the note, under his contract of hiring, and that Willis died five or six weeks thereafter. It was also shown, that proof was introduced from which it appeared that Willis was unwell a few days after the hiring, and so continued up to the time of his death. It was not positively proved that he was unsound at the time he was hired, nor was it pretended that there was a warranty of soundness by the plaintiff, or that he was chargeable with fraud or deceit in the transaction.

The court charged the jury, that to sustain the plea of fraud, the defendant must prove that the plaintiff knew of the unsoundness of the negro at the time of the hiring, and concealed it from the defendant. But if it were

Ricks, adm'r, *vs.* Dillahunty.

shown by the evidence, that the negro was sick when he was hired, and died from a continuation thereof, a few weeks thereafter, although the plaintiff was ignorant of his sickness, yet under the plea of a failure of consideration, they must find for the defendant. If, however, the services of the negro were worth any thing, the plaintiff was entitled to recover an equivalent therefor.

The plaintiff's counsel moved the court to instruct the jury, that if there had been no breach of warranty, or no fraud, either in misrepresenting or concealing the truth in regard to Willis' health when he was hired by the defendant, in the absence of all proof that he was then unsound, or if unsound, that the plaintiff was ignorant of his condition—the defendant could not claim an abatement from his obligation to pay hire,—which instruction, the court declined giving.

Verdict and judgment for defendant, to reverse which, the writ of error was taken.

The charge given, and the refusal to charge, were assigned as erroneous.

*Martin,* for plaintiff in error.

*Martin,* for the plaintiff in error, to support the grounds taken in the assignment of error, cited—(Bl. 1, B 2, 451; 2 Porter, 280; 3 Stewart, 140; Ib. 322; 1 Stew. & Por. 71; 2 Stew. & Porter, 224.)

COLLIER, C. J.—The charge given in this case, and that refused, present the question—Whether the *unsoundness or worthlessness of a personal chattel at the time of its*

Ricks, adm'r, *vs.* Dillahunty.

*sale*, constitute a defence to an action brought for the recovery of the purchase money?

It is understood that the seller of personal chattels impliedly stipulates that the article sold is his own, and that he will indemnify the buyer for the loss, if the title is in another person—(3 Bla. Com. 166; Stuart vs. Wilkins, Doug. R. 18; Furnis vs. Leicester, Cro. Jac. 474; Crosse vs. Gardner, Carth. Rep. 90; Macbee's adm'r vs. Gardner, 2 Har. & Gill's R. 176; Chism vs. Woods, Hard. R. 531; Osgood vs. Lewis, 2 Har. & Gill's R. 495; Defreeze vs. Trumper, 1 Johns. R. 274.) But a sale by an executor, administrator, or other trustee, forms an exception to the rule, and does not imply a warranty of title, unless there be fraud, or perhaps in some instances, gross negligence —(Forsyth vs. Ellis, 4 J. J. Marshall's R. 298; M'Ghee vs. Ellis & Browning, 4 Litt. R. 244; Peter vs. Thornton, 6 Monroe's R. 27; Head vs. McDonald, 7 Monroe's R. 206; 2 Kent's Com. 374.) But to entitle the purchaser to recover for any defect in the quality or soundness of the article or property sold, except under special circumstances, he must prove that the seller warranted the thing sold to be good and sound, or that he concealed or fraudulently represented its qualities—(3 Bla. Com. 164, 165; 2 Kent's Com. 374, and cases there cited; 1 Peters' C. C. R. 317; Lowndes vs. Lane, 2 Coxe's R. 363; Sexas vs. Woods, 2 Caine's R. 48; Snell vs. Morris, 1 Johns. R. 96; Perry vs. Aaron, ibid. 129; Defreeze vs. Trumper, Ibid. 274; Holden vs. Dakin, 4 Johns. R. 421; Davis vs. Meeker, 5 ibid. 354, 395; Cunningham vs. Spier, 13 ibid. 392; Fleming vs. Slocum, 18 ibid. 403; Wilson vs. Shackleford, 4 Rand. R. 5; Reed vs. Prentiss, Adams' R. 174;

8 P. 18

Lanier vs. Auld, 1 Murphy's R. 138; Erwin vs. Maxwell, 2 Murphy's R. 245; Smith vs. Miller, 2 Bibb's R. 616; Glascock vs. Wells, Cook's R. 262.) If the warranty be express, it will extend to all defects, whether known or unknown, to the seller, unless they be such as a common purchaser might have observed at the time of the sale— (Onslow vs. Eames, 2 Starkie's N. P. R. 81; Williams vs. Stafford, 8 Pick. R. 250; Sweet vs. Colgate, 20 Johns. R. 196; Bonekens vs. Berons et al. 3 Rawle's R. 32; Ex'rs of Hart vs. Edwards, 2 Bailey's R. 306; Watts vs. Mattingly, 1 Bibb's R. 244; Pile vs. Shannon, Hardin's R. 55; Ferrin vs. Taylor, 3 Cranch, 270; Butterfield vs. Burroughs, 1 Salk. R. 211; Margetson vs. Wright, 5 M. & P. 606; 7 Bingh. R. 603; 8 Bingh. R. 454.) What will constitute a warranty is not always easy to be determined. It is certain that no particular form of expression is required. It will, in general, depend upon the meaning of the terms, and the sense in which they were used or understood by the parties, whether they amount to a warranty, or are to be regarded as a representation of the seller's opinion. If a man say of property, of which he is on a treaty of sale, that he knows its qualities, and that it is free from all defects,—his affirmation, professing to be founded upon knowledge, and not opinion or belief, should be regarded as equivalent to a direct and positive warranty, and oblige him to indemnify the purchaser for all defects existing at the time of the sale, whether known to the seller or not. Upon this point, Chandelor vs. Lopus (Cro. Jac. 4; Dyer, 75 a.) is a leading case. There, the defendant being a goldsmith, and having skill in jewels and precious stones, had a stone

Ricks, adm'r, *vs.* Dillahunty.

which he affirmed to be a bezoar stone, and sold it to the defendant for one hundred pounds, when in truth it was not a bezoar stone. The plaintiff having recovered a judgment in the King's Bench, the case was removed to the Exchequer Chamber, where all the judges but one, concurred in reversing that judgment, holding the *bare affirmation* that it was a bezoar stone, without *warranting it to be such, or fraudulently misrepresenting its character*, gave no cause of action against the seller. In Duffee vs. Mason, (8 Cowen's R. 25,) the seller said of a colt he was about selling—"There is nothing the matter with the colt: it is well and sound, and will make a fine horse." The court submitted it to the jury, to say whether there was a warranty, or only a mere expression of the vendor's opinion, and directed them to say how the words were understood by the parties. And to the same effect, are many of the decisions in the different States— (Chapman vs. Murch, 19 Johns. R. 290; Whitney vs. Sutton, 10 Wend. R. 413; 13 ibid. 277; Cook vs. Moseley; Swett vs. Colgate, 20 Johns. R. 203; Osgood vs. Lewis, 2 Har. & Gill, 495; Bacon vs. Brown, 3 Bibb's R. 35; 3 Rawle's R. 32; 7 Serg. & Rawle, 480; 10 Johns. R. 484; 4 Cowen's R. 444; See 'further, Palsey vs. Freeman, 3 T. R. 57; Button vs. Corder, 7 Taunt. R. 405; 1 Moore's R. 109; Cave vs. Coleman, 3 M. & R. 2.) It is not, however, necessary that the purchaser, in order to his indemnity, should in all cases require an express warranty. In some cases, the law will imply it. Thus, the seller of provisions tacitly agrees that they are wholesome at the time of delivery—(1 Fonblanque's Equity, N. X. 120, 121.) So, the merchant abroad, who fills an

order for his customer residing in this country, implied-
ly stipulates with the purchaser, that the goods are mer-
chantable; and one who sells by sample, undertakes
that the article to be furnished, is of the quality of the
sample shown—(2 Com. on Con. 263, *et post;* Hibbert
vs. Shee, 1 Camp. R. 113; Germaine vs. Burton, 3 Stark.
N. P. R. 32; Parker vs. Palmer, 4 B. & A. 387; Andrews
vs. Kneeland, 6 Cowen's R. 354; Bradford vs. Manly, 13
Mass. R. 139; 12 Wend. R. 413, 566.)

Where there was no warranty at the time of the sale,
but a mere representation, it is not enough to show that
the thing sold was not such as it was represented to be;
but the purchaser must go farther, and prove such a state
of facts or circumstances, as fix upon the seller a know-
ledge that his representation was false when he made it.
Where this is shown, the seller is justly chargeable with
a fraud—(Smith vs. Miller, 2 Bibb's R. 616; 1 Fon-
blanque's Eq. Note X. 120, 121, and cases cited above.)
So, if a vendor conceal the defects of property, he is
chargeable on the ground of having suppressed the truth,
to the buyer's prejudice—(Smith vs. Rowzee, 3 Marsh.
Ky. Rep. 527; Parkinson vs. Lee, 2 East's R. 314; Jones
vs. Rowden, 4 Taunt. R. 847.)

The general principles we have laid down, apply with
all their force to a contract for the sale and hire of a
slave, so far as the nature of the subject will allow—
(Wheeler on Slavery, 107, *et post.*) The hirer of a slave
for a *definite period,* becomes his purchaser for the *time
agreed on,* and if he dies before its expiration, the loss of
service must be borne by the hirer, who, if sued on his
undertaking to the owner, cannot resist a recovery

by showing that the act of God prevented him from deriving a profit from his contract, unless, by its terms, it provides for such a contingency—(Redding vs. Hall, 1 Bibb's R. 536; Harrison vs. Murrell, 5 Monroe's R. 359; Williams vs. Holcombe, 1 Caro. L. Rep. 365; and McClellan vs. Cook, Ala. Rep. 257.)

In Virginia and South Carolina, a different rule has been adopted. In those States, it is held that the owner is not entitled to recover hire, for the time intervening between the death of the slave and the expiration of the time for which he was hired, but in such a case, the hire must be apportioned—(George vs. Elliott, 2 Hen. & Mun. R. 6; Bacot vs. Parnell, 2 Bailey's R. 424.)

In South Carolina, it has been repeatedly adjudged, that the payment of a sound price implies a warranty of the soundness, by the seller of a personal chattel— (Timrod vs. Shoolbread, 1 Bay's R. 324; Rouple vs. McCarty, 1 Bay's R. 480; Lester vs. Ex'ors of Graham, 1 Const. R. 183; State vs. Gaillard, 2 Bay's R. 19; Barnard vs. Yates, 1 Nott & McC. 142; Missroon vs. Waldo, 2 ib. 76; Crawford vs. Wilson, 2 Const. R. 353.) Whatever commendation these decisions may claim from the moralist, they certainly derive no support from the English common law.

In the case at bar, the instructions to the jury maintain the principle, that it is enough for the purchaser of personal property to show that it was of no value, though the seller may have made no warranty, nor have practised a fraud upon him. In thus supposing the law to be, the Circuit court erred:—its judgment is therefore reversed, and the cause remanded.