## POOL, ADM'R, *vs.* HODNETT & HAYS.

1. Where an administrator sells property, which has come into his hands as assets of the estate, in conformity with the requirements of the statute, the purchaser, in the absence of a warranty, express or implied, and of fraud, either in representation or concealment, cannot resist the payment of the purchase money, on the ground, that he has been dispossessed of the property since the sale, under a title, paramount to that of the intestate, and of which he had notice at the time of his purchase.

2. Nor, in such case, can the right of the administrator to recover be affected by the fact, that the holder of the superior title was present at the sale and made statements which induced the purchase, it not appearing that there was any collusion between him and the administrator.

ERROR to the Circuit Court of Chambers.    Tried before the Hon. E. Pickens.

HEFLIN, for the plaintiff in error.

BAUGH, for the defendant.

CHILTON, J.—The plaintiff in error sued the defendants in the Circuit Court of Chambers county, to recover the amount of twelve notes, for forty-five dollars each, and one for thirty-six dollars, executed by the defendants and payable to the plaintiff, as administrator of the estate of Martha Brewer.   Pleas were interposed, impeaching the consideration of the notes as having failed, and upon the ground of fraud.   There was a verdict and judgment for the defendants below, to reverse which the plaintiff has prosecuted his writ of error to this court.

Upon the trial, a bill of exceptions was sealed, from which it appears that the notes sued on were given for the price of a negro woman sold by the plaintiff, as an asset of the estate of Martha Brewer, deceased, and which he had returned as property of said estate in his inventory thereof; that said sale was regularly made by an order of the Orphans' Court of Randolph county, from which the plaintiff derived his appointment, and in a public manner, at auction, as required by the statutes ; that at the time said slave was offered for sale, one James O'Neal was present and forbid such sale, stating publicly that he was the representative of the estate of Edwin O'Neal deceased, and would claim the slave for the benefit of said estate; that the plaintiff thereupon directed the crier of the property to proceed with the sale; and that pending the sale, said O'Neal publicly stated that he did not wish the claim set up by him for the estate of Edwin O'Neal to injure the sale of the property, that he wanted the slave to bring her full value, and that he would look to the administrator, and hold him responsible for the proceeds of the sale.   Shortly after the sale, Hodnett, who became the purchaser, having turned the slave over to Hays, his son-in-law, James O'Neal commenced his action of detinue, as administra-

tor of Edwin O'Neal's estate, and succeeded in obtaining a judgment for the recovery of the slave, or six hundred dollars, her alternate value, which judgment Hays satisfied by paying the money. It was also made to appear that the plaintiff in this action was notified of the pendency of the suit against Hays, and that the same had afterwards terminated in a judgment as above set forth. The said slave was proved to have been in possession of Mrs. Brewer, in the State of Georgia, from the year 1831 to 1837 or 1838, when she removed to this State, bringing said slave with her, and retaining the continued possession and exercising acts of ownership over her until early in 1844 or 1845, when Mrs. Brewer died, and thereupon said slave with others went into the possession of the plaintiff, as her administrator, and was sold as the property of said estate at the same time the others were sold. The proof further tended to show that when the slave was offered for sale, the plaintiff publicly made known to all persons present, and in the hearing of the defendant, that he was only selling the slave as administrator, and would only sell such title to her as his intestate had, at the time of her death, and that he would not warrant the title of said slave to the purchaser.

This being substantially the proof in the cause, the plaintiff asked of the court the following charges: That if they, the jury, believed from the evidence that the notes sued on were given for a slave sold by the plaintiff, and that when the slave was offered for sale it was made known to the by-standers, and in the presence and hearing of the defendants, by James O'Neal, who claimed a title to the slave paramount to the plaintiff's intestate, that there was an incumbrance on the title to the slave, and that the administrator made known to all present that he was only selling the slave as administrator, and would only sell such title as his intestate had to the slave, and would not warrant the title to the purchaser, but that the purchaser would buy at his own risk, then they must find for the plaintiff, notwithstanding the defendants have been dispossessed of the slave by a better title than the title the defendants acquired at said sale.

2. That in sales regularly made by an administrator of the personal property of his intestate under an order of the Orphans' Court, the law does not imply a warranty of the title to the property sold, and the purchaser buys at his own risk; and that not-

withstanding the purchaser may be dispossessed of the property by due course of law, it is no defence to an action on the notes given for the purchase money, unless an express warranty of title is made by the administrator, or fraud or gross negligence on the part of the administrator is shown by the purchaser; and that fraud or negligence must be proved by competent evidence and cannot be presumed."

These charges the court refused to give, and the plaintiff excepted, and here insists upon their legality. Having thus fully stated the case, out of which the points before us arise, let us proceed to examine into the propriety of the charges.

In respect of sales generally, the seller of personal property impliedly stipulates that the article sold is his own, and that he will indemnify the purchaser for the loss which may result from want of title, but no such implied warranty of title exists as against administrators and other trustees, who make sales in their fiduciary capacity.  An exemption from personal responsibility on account of such implied warranty is deemed indispensable in such cases, for were the law otherwise, every one might be detered from the acceptance of an office, in the exercise of the duties of which he might be compelled to make sales, and subjected to great personal hazzard and loss from a failure of title. —Mocklues, adm'r, v. Gardner & Wife, 2 H. & Gill's Rep. 176.  But in the case before us, it is not necessary to show that such exemption does exist, for testing this case by the rules of law, which apply ordinarily to sales of chattels made by individuals on their own account, we feel satisfied that the first charge asserts the law correctly.  The seller may be held responsible for a failure of title, first, where there is an express warranty, secondly, where the law implies a warranty, from the circumstances of the case, or the nature of the thing sold, and thirdly, where the seller has made some fraudulent representation, or has been guilty of concealment, in respect to some matter constituting a material inducement to the purchase, and whereby the purchaser was deceived to his injury.—Story on Sales, § 349.  The case at bar falls within neither of these sources of liability; for there was, besides the character in which the plaintiff sold, an express declaration by him, as the charge supposes, that he would not warrant the title—that he proposed selling only such title as his intestate had at the time of her death.  She

had the possession and had retained it for some thirteen years, exercising acts of ownership over it. There was no misrepresentation by the administrator, no concealment of any matter which he was bound to disclose, and the purchaser may fairly be presumed to have been advised, at the time of his purchase, of the adverse claim of O'Neal's estate, as the sale was publicly forbidden in his presence. It is clear then, that under such circumstances the rule, *caveat emptor*, applies. If Hodnett, under the circumstances, had purchased the slave, or rather the interest claimed for the plaintiff's intestate, for ten dollars, and upon the title which her long continued adverse possession confered had succeeded in defeating the claim of O'Neal's estate, could it be seriously contended that the plaintiff could have recovered more than the price of his bid? It is certain that he could not, if Hodnett had fairly purchased. So neither, on the other hand, should Hodnett be allowed to avoid a recovery, because his purchase turned out to be an unfortunate one. He knowingly made a hazardous bargain, and got all he purchased, namely, the possession of the slave, with whatever interest the plaintiff, as administrator, could sell. And having purchased nothing more, the court cannot relieve him, because he may have made an improvident or bad bargain by giving greatly too much for such interest. The circumstances of the case make it perhaps a very hard one upon the defendants, but the law, which determines cases upon general principles, does not yield to considerations of hardship. These principles meet the great aggregate of cases, but in the language of Mr. Story, "may often fail to extract the sting of injustice from the individual case." If then, in this case, as the charge assumes, there was a fair sale of the slave, in the absence of all warranty either express or implied by the plaintiff, and in the absence of all fraud, resulting from misrepresentation or concealment, and the purchaser obtained by the purchase all the vendor proposed to sell, the interest of his intestate, and gave the notes sued on for the same, we know of no principle of law which would authorise him to avoid the payment of such notes, by reason of the subsequent assertion of a paramount title of which he was informed at the time of his purchase. We have said nothing about the statement made by the administrator of O'Neal, which may probably have induced the purchase by Hodnett, for the reason, that in the absence of all collusion

between him and the plaintiff, what he said, being a stranger to the transaction, could not affect the right of the plaintiff to recover. Whether the administrator of O'Neal could be held personally responsible, for holding out such inducement to purchasers for the damage they sustained in trusting to it, is a question not before us and one upon which we give no intimation.

For the error in refusing to charge as asked, the judgment must be reversed, and the cause remanded.