## BURNS *vs.* HAMILTON'S ADM'R.

[BILL IN EQUITY FOR RESCISSION OF CONTRACT OF SALE.]

1. *Purchaser at judicial sale not entitled to rescission of contract on account of ignorance or mistake of law.*—A purchaser of land at a public sale by an administrator, under an order of the orphans' or probate court, cannot obtain relief against it in equity, on the ground that the sale was void for want of jurisdiction in the court by which the order of sale was granted, when it appears that there was no warranty, no fraud, and no mistake or ignorance as to any material fact.

2. *Ignorance of law and fact distinguished.*—An averment in a purchaser's bill, seeking relief against his purchase at an administrator's sale, " that he was ignorant that there was any defect in the title to said land, or that the title to the same did not pass by the said sale," or " that the first certificate for the land had been improperly issued, and that a second one had issued,"— construed most strongly against the pleader, is merely an allegation that he was ignorant of the legal effect of the known facts, and not that he was ignorant of the facts which made the title defective.

3. *Jurisdiction of orphans' court to order sale of decedent's lands.*—The orphans' court has no jurisdiction to order the sale of lands, to which the decedent had a pre-emption claim at the time of his death, and which were afterwards entered by his administrator in the name of his heirs.

33 210
94 179
33 210
95 559

Burns v. Hamilton's Adm'r.

APPEAL from the Chancery Court of Talladega.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Jesse M. Burns, against the administrator and heirs-at-law of Milton B. Hamilton, deceased, on the 16th April, 1849. The facts on which the complainant predicated his claim to relief, as stated in the bill, were these:

Milton B. Hamilton died, in Cherokee county, Alabama, in August, 1839, being in possession of a tract of land which he had been cultivating for several years, but which belonged to the United States. In the spring of 1843, his administrators made application to the land-office at Lebanon, claiming that their intestate had a pre-emption right to the land, paid the purchase-money, and obtained a certificate of entry in his name. On the 10th April, 1844, the register of the land-office at Lebanon, being instructed by the commissioner of the general land-office at Washington that this certificate was improperly issued, issued another certificate of entry in the name of "the heirs of Milton B. Hamilton;" and a patent was issued to them, by that description, on the 1st May, 1845. On the 2d February, 1844, the administrators in chief having resigned and been removed, letters of administration *de bonis non* on the estate of said decedent were granted to John Chapman, who, on the 5th April, 1844, filed a petition in the orphans' court of Cherokee county, asking an order to sell this land for the purpose of paying the debts of the estate. Under this petition, the court granted an order of sale on the 7th September, 1844; and the land was sold under this order, at public outcry, on the 31st of October, 1844, the complainant becoming the purchaser. "At the time of said sale, complainant and his agent, Samuel Burns, by whom the purchase was made, were totally ignorant that there was any defect in the title to said land, or that the title to the same did not pass by the said sale; and complainant was ignorant that the first certificate had been improperly issued, and that a second one had issued, and remained thus ignorant

until after the execution of his note for the purchase-money, as hereinafter stated."

The terms of the sale required a part of the purchase-money to be paid in cash, and the balance in six months; but the cash payment was not made until the 8th February, 1845, when a note, with two sureties, was also given for the balance, ante-dated as of the day on which the sale was made; and the administrator then executed a written instrument, under seal, acknowledging the receipt of the money and note, and binding himself, "so soon as said sale shall be confirmed," to make to the complainant, "pursuant to the order of the court, such deed for said land as" he might be "by law authorized and required to make." The administrator's report of the sale was confirmed by the court in February, 1845; but it does not appear that any deed was executed to the complainant. Soon after the maturity of the note for the balance of the purchase-money, the administrator brought suit on it, and recovered a judgment against all the parties thereto in April, 1849. The complainant attempted to defend the suit, on account of the failure of consideration; but the circuit court ruled, that he could not set up that defense while retaining possession of the land.

The complainant offered in his bill to account for the rents and profits of the land, while in his possession; and prayed, that the purchase-money paid by him might be refunded, that the judgment might be enjoined, and for other and further relief.

The chancellor dismissed the bill, for want of equity; and his decree is now assigned as error.

M. J. TURNLEY, for the appellant.

ALEX. WHITE, contra.

RICE, C. J.—The rule, " caveat emptor," applies to sales of land under the order of the probate or orphans' court. A purchaser at such a sale buys at his peril. Although he may pay the purchase-money, and get no title; yet, if he obtained no warranty, and if at the time of the sale there was no fraud, and no mistake or igno-

rance of any material *fact*, he has no right to relief in a court of equity. He cannot found a right to relief on his mere ignorance or mistake of *law*.—Haden v. Ware, 15 Ala. 149.

Tested by these principles, the complainant's bill shows no right in him to relief. True, he alleges that, at the time of the sale, and up to a period subsequent to February, 1845, and to the execution of the note for the residue of the purchase-money, he was "ignorant that there was any defect *in the title* to said land, or that *the title* to the same *did not pass by the said sale*," or that "the first certificate had been *improperly* issued, and that a second one had issued." But, construing these allegations most strongly against him, as it is our duty to do, we are bound to take them as allegations of his mere ignorance of *the legal effect* of the *known facts*. He does not pretend in his bill that he was ignorant of any of the following facts: that the intestate, at the time of his death, had nothing but a pre-emption right; that no entry of the land had been made at his ·death; that after his death the pre-emption right was established by his administrators, and the land entered by virtue thereof. These facts being known to the complainant at the time he purchased at the sale made under the order of the orphans' court, it was immaterial whether he knew in whose name either of the certificates had issued; for, no matter in whose name they issued, the sale of the land as the real estate of the intestate, under the order of the orphans' court, could not pass any title to the purchaser, for the reason, that at the time of his death, the intestate had no title, either legal or equitable, *to the land*, and no such interest therein as could be sold by order of any court.—Johnson v. Collins, 12 Ala. R. 322; Pettit v. Pettit, at last term; Cothran v. McCoy, at this term. And if with a knowledge of these facts, the complainant purchased at the sale under the order of the orphans' court, without fraud, and without any warranty, he has no right to call upon a court of equity to relieve him.—Jennings v. Adm'rs of Jenkins, 9 Ala. 285; Worthington v. McRoberts, 9 Ala.

297; Pool v. Hodnett, 18 Ala. 752; Ricks v. Dillahunty, 8 Porter, 133.

The decree of the chancellor is affirmed, at the costs of the appellant.