# Bolling *v.* Jones.

*Creditors' Bill in Equity to set aside Fraudulent Conveyance by Deceased Debtor, and for settlement of Insolvent Estate.*

1. *Statute of limitations; how taken advantage of.* — In all courts, the statute of limitations is in the nature of a personal defense, and must be specially pleaded, according to the practice and procedure of the court, or it will be regarded as waived.

2. *Assignment of error on decree from which appeal is barred; joinder in error.* A joinder in error in a chancery cause, and a submission for decision on the merits, without any motion to strike out assignments of error based on a decree from which an appeal was barred, or to dismiss the appeal on that ground, operate as a waiver of the objection, and the assignments will not be disregarded by the court. So held in this case, the joinder being in these words : "There is no error in the record, of which the appellant can *now* complain."

3. *Consideration of mortgage; recitals, and burden of proof.* — When the validity of a mortgage is assailed by creditors whose debts were in existence at the time it was executed, its recitals of a consideration are not evidence against them, and the *onus* is on the mortgagee to prove his debt.

4. *Rents of wife's lands; husband's liability for.* — The husband has the right to receive the rents of the wife's statutory estate, free from liability to account (Code, § 2706) ; and his receipt and use of them do not create a liability or debt, such as will support a conveyance to the wife, as against his creditors.

5. *Homestead exemption to decedent's widow; by what law determined, and in*

Vol. LXVII.

[Bolling v. Jones. ]

*what lands claimed.*—The right to a homestead exemption, in favor of the widow of a deceased debtor, must be determined by the law which was of force when the debts were contracted against which it is asserted, and can only be claimed in lands in which the decedent had such an interest as might be sold for the payment of debts by his administrator.

6. *Validity of fraudulent mortgage as between parties; sale of equity of redemption.*— A mortgage, though it may be fraudulent as against existing creditors, is valid and binding as between the parties, their heirs, personal representatives, and privies in estate; and the equity of redemption remaining in the mortgagor is liable to sale by his administrator for the payment of debts, and subject to a claim of homestead exemption by his widow.

7. *Judicial sales; relief to purchaser against.*—The doctrine of *caveat emptor* applies to judicial sales, and the purchaser can not resist the payment of the purchase money, nor recover it if paid, because his purchase proved to be injudicious or worthless.

8. *Claim of homestead exemption by mortgagor's widow, when mortgage is set aside by creditors on ground of fraud.*—A mortgage executed by the husband to the wife, to secure a simulated indebtedness, being held fraudulent and set aside under a bill filed by creditors, the wife may claim a homestead exemption in the lands, or, in lieu thereof, $500 of the proceeds of sale under the decree (Rev. Code, § 2061); but, the estate of the deceased mortgagor having been declared insolvent before the bill was filed, and the lands sold by the administrator, under a probate decree, for the payment of debts, the widow becoming the purchaser at the price of $500, which was claimed and allowed to her as the value of her homestead interest—her homestead claim was thereby extinguished; and the lands being again sold under the decree of the court, she is not entitled to $500 of the proceeds of sale, although the former sale was set aside under the prayer of the creditor's bill. (STONE, J., *dissenting.*)

APPEAL from the Chancery Court of Butler.

Heard before Hon. H. AUSTILL.

The bill in this case was filed on the 31st August, 1871, by Samuel J. Bolling, as a creditor of the insolvent estate of Joseph A. Jones, deceased, suing on behalf of himself and all other creditors who had duly filed their claims against said estate, and who might come in and contribute to the costs of the suit; against Mrs. Sarah J. Jones, the widow of said decedent, William F. Jones, his son, and James H. Perdue, as the administrator *de bonis non* of his estate; and sought to set aside, on the ground of fraud, a mortgage of a certain house and lot in Greenville, which the said Joseph A. Jones had executed to his wife and son, to secure an alleged indebtedness therein recited; also, to vacate and set aside a sale of said lands, made by said administrator under an order of the Probate Court, at which the widow became the purchaser, and to remove the settlement of the insolvent estate into the Chancery Court. The mortgage, a copy of which was made an exhibit to the bill, was dated the 22d June, 1868; recited an indebtedness on the part of the mortgagor, to his wife and said son, as evidenced by a promissory note for $400, payable to Mrs. Jones, and two promissory notes payable to said William F. Jones, together amounting to $800; and contained a power of sale, if default should be made in the payment of the notes by the 25th December,

1868.   Joseph A. Jones died some time during the year 1868, intestate ; and letters of administration on his estate were duly granted by the Probate Court of said county, on the 29th September, 1868, to said William F. Jones, his son.  In July, 1870, said administrator reported the estate insolvent, and it was so declared on the 1st September, 1870.   In October, 1870, the administrator made a final settlement of his administration, and was discharged ; and letters of administration *de bonis non* on the insolvent estate were thereupon granted to James H. Perdue, by virtue of his office as sheriff of the county.   The complainant's debts against the estate had been duly presented to the administrator in chief, and were regularly filed as claims against the insolvent estate within nine months after the declaration of insolvency. They consisted of a promissory note for $400, dated the 5th December, 1866, and payable on the 1st January, 1868, on which was indorsed a credit of about $200 ; and a liability as surety for said Jones on a note for $1,003.75, dated the 13th August, 1867, and payable on the 1st January, 1868, to Mrs. Elizabeth Jernigan or order.   On the 16th March, 1871, the administrator *de bonis non* filed a petition, asking an order to sell the house and lot for the payment of debts, and, having obtained an order of sale, made the sale on the 12th June, 1871, the widow becoming the purchaser at the price of $500; and the sale was reported to the court, and confirmed by it, and a conveyance executed to the purchaser under its order. The $500 was not in fact paid to the administrator, though he acknowledged the receipt of it : that amount was allowed to the widow, on her petition, as her homestead interest in the lands, out of the proceeds of sale, and receipts were reciprocally executed by her and the administrator.   At the sale by the administrator, notice of the mortgage was given, and also of the widow's claim to $500 of the proceeds of sale; and the property was knocked down to her at $500, the only bid made.

There was no controversy as to any of the facts above stated.   The bill alleged that the debts recited in the mortgage were fictitious—that it was not supported by any consideration, and was executed with the intent to hinder, delay, and defraud the creditors of the mortgagor ; that the notice and claim made at the sale on behalf of the widow, as to the mortgage and homestead right, were intended to prevent competition, and to enable her to buy in the property without paying anything for it ; that she never paid the $500, and that it was illegally allowed to her, on account of her claim of homestead, to the injury of the creditors of the estate.   The bill therefore prayed, that the sale and convey-

[Boliing v. Jones.]·

ance by the administrator might be set aside, cancelled, and held for naught; that the mortgage might be declared fraudulent, null and void, and be delivered up to be cancelled; that the settlement of the insolvent estate might be removed into the Chancery Court, and for general relief.

A joint answer was filed by Mrs. Sarah J. and William F. Jones, denying the allegations of fraud, and asserting the *bona fides* and validity of the mortgage. They alleged that said Joseph A. Jones was indebted to his wife for moneys belonging to her statutory separate estate, which he had received and used, and which were partly expended in paying for the lot and improvements. They admitted that notice of the mortgage, and also of the widow's homestead right, was given at the sale; and alleged that this was done in good faith, and as an act of justice to persons who might desire to bid for the property. As to the widow's homestead claim, they alleged that, on the 14th March, 1871, she filed her petition in the Probate Court, praying that "$500 worth of real estate" might be set apart to her, out of the insolvent estate of her deceased husband, as her homestead right; that commissioners were thereupon appointed by the court to make the allotment; that the commissioners reported to the court, on the 23d March, 1871, "that said real estate could not be set apart without injury to the remainder of the estate; whereupon the judge decreed that all of the lands of said estate be sold, and that the administrator should pay $500 to the said Sarah J. Jones in lieu of a homestead;" and that the $500 bid at the sale was paid by an exchange of receipts between the administrator and the widow, as above stated. Copies of the report of sale by the administrator, the confirmation of the sale, and the decree allowing $500 to the widow, on account of her homestead right, were made exhibits to the answer. A demurrer to the bill, for want of equity, was incorporated in the answer; and it was insisted, by way of plea, that the complainant had forfeited his right to relief, by his failure to object to the sale, at which he was present, or to the proceedings in the Probate Court, of which he had personal notice, and to which he was a party.

The bill alleged that the house and lot were worth at least $2,000, but the answer alleged that the value was not more than $1.000, or $1,200; while the testimony of the complainant's witnesses estimated it at between $1.500 and $2,000. No testimony was taken by the defendants, or either of them, to prove the debt to William F. Jones, as recited in the mortgage; and the only proof as to the recited debt due to Mrs. Jones, was in the deposition of Joseph R. Jones, a younger son, who testified to the receipt of moneys by the

decedent, after his marriage with Mrs. Jones in 1865, accruing from the rents of lands belonging to her.

The cause being submitted for decree on pleadings and proof, at the October term, 1875, the Chancellor rendered a decree, holding that the mortgage was fraudulent and void so far as it related to the recited debt due to William F. Jones, and that the complainant was entitled as against him; setting aside the sale and conveyance by the administrator; removing the settlement of the estate into the Chancery Court; and ordering a reference to the register, to ascertain and report—1st, whether the widow was entitled to dower in the house and lot; 2d, whether she was entitled to $500 "of the proceeds of the property;" 3d, the claims filed against the estate; and, 4th, *"the amount due complainant on the debt secured by the mortgage in her favor by William F. Jones, deceased(?)"* This decree was rendered on the 27th October, 1875. At the April term, 1876, the register reported, that the widow was not entitled to dower, on account of the value of her statutory separate estate; that she was entitled to $500 of the proceeds of the property; and that the amount due to her, on the debt secured by the mortgage was $668.43. The report was confirmed, without objection; and on the 22d April, 1876, the Chancellor rendered a decree, or decretal order, declaring that the widow, not being entitled to dower, was chargeable with the reasonable rent of the house and lot during her occupancy, and directing the register to ascertain and report the value thereof, with interest.

At the ensuing October term, 1876, the register made his report, charging the widow with rents amounting, with interest, to $1,589. Exceptions to this report were filed by the widow, but were overruled by the Chancellor, at the same term (October 19th, 1876); and he proceeded to decree as follows: "But, upon hearing the arguments on the matters reported upon, and on further consideration, the court is of opinion, that Mrs. Sarah J. Jones should be charged with rents as mortgagee in possession; and to that end it is now ordered, that the matters be again referred to the register, to take an account between the said Sarah and the estate of the said Joseph A. Jones, deceased. He will allow the said Sarah credit for taxes paid, and for necessary repairs put upon the premises, since the death of said Joseph; and will apply the rent of each year, commencing after the death of her said husband, first to the payment of the interest due on the said mortgage, and the balance, if any, to the satisfaction of the principal." The register made his report under this reference, and in compliance with its terms, showing a balance of $305.73 as due from Mrs. Jones to the estate.

[Bolling v. Jones.]

This report was made at the October term, 1877, and was confirmed by the Chancellor, against the objections and exceptions filed by Mrs. Jones. At the same term, an affidavit and claim of exemption was filed by Mrs. Jones, claiming an interest of $500 in the premises, or proceeds of sale, "which has been decreed to her by the Probate Court of said county, and which she now claims as exempt from any liability which has accrued under the decree of this court, or which may hereafter accrue against her, for rent, or for use and occupation, or for costs, or in any other manner whatever." The cause being submitted for final decree at the same term, the Chancellor rendered a decree, ordering a sale of the property by the register; directing him to pay $500, out of the proceeds of sale, to Mrs. Jones; and awarding execution against her, in favor of the administrator, for $305.73, the balance of rents reported against her by the register.

The appeal was sued out by the complainant on the 1st November, 1878. The errors assigned are—1st, "the decree holding that the mortgage was valid as to said Sarah J. Jones"; 2d, "the decree allowing Mrs. Jones a homestead right of $500 in the premises"; 3d, "decreeing that Mrs. Jones was entitled to be credited with amount of repairs on the premises"; 4th, "decreeing costs against complainant"; 5th, "not decreeing that the mortgage was fraudulent as against complainant"; 6th, "in each and every ruling against complainant"; 7th, "in allowing $500 to Mrs. Jones, when she was ascertained to be indebted in a large sum for rents, which should have been deducted from the said $500." There was a joinder in error, in these words: "There is no error in the record, of which the appellant can *now* complain."

WATTS & SONS, for appellant.

HERBERT & BUELL, *contra.*

BRICKELL, C. J.—All the assignments of error, except the fourth and the seventh, relate to matters involved in the final decrees settling the equities of the cause, or, rather, declaring and defining the rights of the parties, rendered more than two years before the appeal was taken. The statute of force when the decrees were rendered, and when the appeal was taken, limited appeals to two years from the rendition of the judgment, or decree. It is insisted in the argument submitted by the counsel for the appellees, that these assignments must be disregarded, because an appeal from the decrees into which the errors are supposed to have entered was barred. The appellees joined in the assignment of errors,

(33)

and submitted the cause for decision, without having pleaded in bar the statute of limitations, or moved to strike out the assignments, or to dismiss the appeal.

In all courts, the statute of limitations is in the nature of a personal defense, which must be pleaded specially, according to the practice and procedure of the court, and, if not pleaded, must be regarded as waived.—Ang. on Lim. § 285. Such statutes are not limitations on the jurisdiction of courts, which is bounded by subject-matter and by parties. They are intended solely for the benefit and protection of parties, and may be relied on, or waived by them, as they may be advised, or may deem most proper. At common law, writs of error were governed by rules of pleading analogous to, and as well defined as the rules of pleading in original actions in courts of original jurisdiction. The assignment of errors was in the nature of a declaration. To this assignment the defendant pleaded or demurred, as he was advised. The pleas were common or special. The common plea, being simply an averment that there was no error in the record, was a mere joinder with the plaintiff in error, in referring the matters at law to the judgment of the court. Special matters were pleaded specially, either in abatement, or in bar. A release of errors, or that the writ of error was barred by the statute of limitation, was the matter of a special plea in bar.—2 Tidd B. 1168-75. If these were not pleaded, the court did not notice them, and of them no advantage could be claimed by the defendant.—*Brooks v. Morris*, 11 How. (U. S.) 204; *Merriam v. Haas*, 3 Wall. 687.

In this court, the matter has been the subject of rules, adopted soon after the organization of the court, under which a practice, in some respects variant from the practice at law, has grown up, and been of uniform recognition. The rules substantially correspond with the uniform law, as to the assignment of errors, and the common plea, or joinder, in error. Special pleas have not been required, but of the matter of such pleas, the defendant in error has been permitted to avail himself by motion addressed to the court, of which notice is given the plaintiff in error by the entry on the motion docket of the court. The right of a plaintiff to bring error to reverse his own judgment, if injustice has been done him, as where it is for a less sum than he claimed, is unquestioned. If, however, he elected to execute the judgment, compelling the defendant to its payment, he was barred of the writ of error. In numerous cases, this court, without compelling the defendant in error to a special plea, has, on motion, required the plaintiff in error to make restitution, or dismissed the writ of error.—1 Brick. Dig. 104, §§ 306-10. So, of the statute of

limitations, the defendant in error has availed himself, by motion to dismiss the appeal, or to strike out the particular assignments of errors which were supposed to be within its influence.—1 Brick. Dig. 104, §§ 311-321; *Garner v. Prewitt*, 32 Ala. 13; *Bradford v. Bradley*, 37 Ala. 453; *Turner v. Turner*, 44 Ala. 437. In all this class of cases, the motion was made and submitted before a joinder in error; or, if there was submission on the merits, it was accompanied with the reservation of the motion, and an agreement that it should be heard and considered notwithstanding the submission on the merits. In other words, by agreement of parties, the motion to dismiss, because of special matter, was not to be regarded as waived, or abandoned, because of the submission on the common joinder in error, but that it was reserved and the submission on the merits was subject to it.

A joinder in error, so far as I know, or can discover from the reports, has been given the operation and effect it had at common law. It is a waiver of all matters which do not go to the jurisdiction of the court; of all defects in the manner of introducing the cause into this court; of every matter which ought, at the common law, to have been specially pleaded.—*Magruder v. Campbell*, 40 Ala. 611; *Carter v. Thompson*, 41 Ala. 375; *Alexander v. Nelson*, 42 Ala. 462; *Thompson v. Lea*, 28 Ala. 453. This precise question, whether the statute of limitations is waived by a failure to move to dismiss the appeal, or to strike out the assignment of errors offensive to it, and a joinder in error, has not, so far as I know, been the matter of an express decision. On principle and authority, I have no inclination, if I had the right, to disregard it as a waiver by the appellees of a statute intended for their benefit, and which they may plead or not at discretion.

The mortgage executed by the intestate, Joseph A. Jones, the validity of which is assailed by the original bill, was executed after the debts of the appellant, Bolling, had been contracted, and after he had become liable as surety on the debt to Mrs. Jernigan. To support, as against the claims of existing creditors of the mortgage, it must be shown that it rests on a valuable consideration; that the debts it purports to secure were just, legal demands. This is not shown by the recitals of the mortgage.—2 Brick. Dig. 22, §§ 121-134. There was no effort to support the debt recited as due and owing to William F. Jones, the son of the mortgagor; and as to that debt the mortgage was pronounced void. The consideration of the other debt, recited as owing to the wife of the mortgagor, was the rents of lands, her statutory separate estate, accruing during coverture, the mortgagor, and husband, had received. These rents the husband had the right to re-

ceive, free from liability to account, and are not a valuable consideration which will support the mortgage as against existing creditors.—*Early & Lane v. Owens*, at the present term.

The exemption of a homestead to the widow could only be claimed under the former statute.—R. C. 1867, § 2061. This was the only law of force, conferring exemptions, when the debts were contracted, to the payment of which it is sought to subject the premises in controversy. It is apparent from the statute, that a homestead was not given to the widow in lands the husband had aliened in his life, but only in lands of which he died seized, having an estate therein of which his personal representative, under an order or decree of the Court of Probate, could make sale for the payment of debts. The mortgage, though void at the instance of pre-existing creditors, is valid as between the parties, their heirs, personal representatives, and privies in estate by mere operation of law.—*Rochelle v. Harrison*, 8 Port. 351 ; *Dearman v. Radcliff*, 5 Ala. 192 ; *Marten v. Marten*, 6 Ala. 367 ; *Walton v. Bonham*, 24 Ala. 513 ; *Wiley v. Knight*, 27 Ala. 336. There remained in the mortgagor, at the time of his death, no more than the equity of redemption in the premises. This was an interest the Court of Probate had jurisdiction to order the personal representative to sell for the payment of debts, and a purchaser at the sale would become invested with it.—*Perkins v. Winter*, 7 Ala. 855 ; *Duval v. McLoskey*, 10 Ala. 636.

The equity of redemption was, also, an estate in which the widow could claim a homestead exemption ; or, if the homestead could not be set off to her, without injury to the lands of which it was a part, could claim its value, five hundred dollars, from the proceeds of the sale made by the personal representative. The Court of Probate, having ordered a sale of the lands for the payment of debts, and having ascertained that the homestead could not be assigned and separated from the lands, properly allowed the widow five hundred dollars from the proceeds of the sale made by the personal representative. When this was paid to her, as it was by crediting her bid for the premises, her claim of homestead exemption was satisfied. If a stranger had purchased at the sale made by the administrator, and from his bid the money had been paid to her, I suppose this would be conceded. Whatever might be the defects in the title, or of however insignificant value the estate of the intestate in the premises, the purchaser could not be relieved from the payment of the purchase-money, or reclaim it if paid. To all such sales the maxim, *caveat emptor*, applies—the purchaser buys at his peril, and can claim no relief if his purchase proves worthless.

[Bolling v. Jones.]

*Burns v. Hamilton*, 33 Ala. 210 ; *Hickson v. Linggold*, 47 Ala. 449 ; *Port v. Hadnett*, 18 Ala. 752. The widow, having become the purchaser of the premises at the sale made by the personal representative, was, therefore, a purchaser at her own peril, bound to the payment of the purchase-money, whether the title she acquired was of value or worthless. If she were now allowed a homestead exemption, in effect, she would be permitted to do that which no purchaser at a judicial sale has ever done in the absence of fraud—reclaim the purchase-money because the purchase was injudicious.

The chancellor erred in not vacating the mortgage, and in the allowance of a homestead to the widow.

Reversed and remanded.

STONE, J. *dissenting.*—On one question I dissent in this case ; the extent of the relief to which complainant is entitled. If there had been no sale by the administrator, of intestate's interest in the lands in controversy, no one will deny that Mrs. Jones would have been entitled to homestead, or its value in commutation. This, on the very familiar principle, that no matter how fraudulent the mortgage may have been, which Jones, the intestate, executed, to the extent of the homestead interest it did the creditors no harm. They had no right to subject that to their demands, whether retained by the husband, or fraudulently conveyed by him. If the mortgage was fraudulent, to this extent it was not fraudulent against creditor ; for they had no interest in that part of the tract, or right to subject it to their demands.—*Fellows v. Lewis*, 65 Ala. 343.

There is still another reason why I think my brothers have erred in their judgment in this cause. Under their ruling, Mrs. Bolling recovers the entire proceeds of the land, including the homestead commutation. Now, there is no pretense that the administrator did less than his duty in selling the intestate's interest in the land. That interest was the equity of redemption, more or less valuable, as the mortgage debt fell below, or equalled the value of the lands. The equity of redemption was all he could sell ; for standing in the shoes of the intestate, and clothed only with the right he could have asserted, he could not assail the mortgage for fraud, no matter how fraudulent it may have been. He was, equally with the intestate, estopped from setting up the fraud in avoidance of the mortgage.—1 Brick. Dig. 664, § 358 ; 1 *Ib.* 16, § 45; 1 *Ib.* 959, § 632. Thus, the administrator could sell only the equity of redemption, and he did sell that under the order of the probate court, and the widow became the purchaser. It is not charged that that proceeding and sale were irregular,

or fraudulent. She then acquired all the interest which the intestate owned at his death. Did she buy her homestead exemption? She already owned that. The entire tract was sold, why? Not because it was subject to administration, nor because the entire proceeds would be assets for the payment of debts. They would not be. The homestead could not be carved out by metes and bounds, and the entire tract was sold, as the only means of ascertaining and separating the assets of the estate from the homestead exemption. Only the *residuum* above the homestead was assets of the estate, and that was the sum, the entire sum, the administrator would be chargeable with as assets. She did not buy her homestead; but the effect of the transaction was a purchase of that part of the land, which was in excess of the value of the homestead. As we have said, she already owned the homestead exemption. Suppose a stranger had purchased, and received a conveyance. Would he not, by virtue of the purchase, have acquired the widow's exempt homestead right? And as to it, would it not be, in effect, a purchase from the widow herself? The money would be payable, and paid to her, and the corresponding interest in the land would, by virtue of the sale, pass out of her, and vest in him? And would not the interest, thus acquired, become his, not as derived from the estate of the intestate, but as purchased from the widow? And suppose, in such case, a creditor of the intestate should proceed to condemn the lands for the payment of intestate's debts, on account of the fraud, such intestate had committed in the execution of a former mortgage, could he condemn the homestead exemption, which had been purchased and paid for by a stranger, and which had never been subject to intestate's debts? Would not such purchaser have the legal title, and a paramount equity? And would not an attaching creditor, seeking to subject the land, be confined in his recovery to the excess above the value of the homestead? That was all he could rightfully claim before the administration sale. Could a rightful and fair sale made by an administrator, and an honest purchase by a stranger, increase the equities of a creditor, whose only right was to pursue assets the administrator could not claim; namely, the interest sought to be conveyed by the fraudulent mortgage? I confess myself unable to perceive why the fact that the widow became the purchaser should subject her to the forfeiture of her homestead, when a purchasing stranger certainly would not have been mulcted. I hold that the five hundred dollars commutation of the exempt homestead, should be paid to Mrs. Jones out of the proceeds of the lands; and in doing

[Henderson v. Henderson's Adm'r.]

so, I leave Mr. Bolling precisely where he would have stood, if there had been no administration sale.

Other questions may arise under proceedings like the present. A fraudulent mortgage may be made, in amount much less than the value of the property mortgaged. Suppose the mortgagor dies, and it becomes necessary to sell his interest in the lands for the payment of debts. Now, as to such *residuum* of interest in the deceased mortgagor, his personal representative is the proper person, and the only proper person, to obtain an order, and sell it. It is his duty to do so, and he commits a *devastavit* if he neglects it. He makes a sale, and an innocent purchaser pays his money for this equity of redemption. Suppose afterwards a creditor, as he may do, proceeds in equity to subject the lands to the payment of his demands. What interest can he condemn? Is it the entire fee, or only that interest which the personal representative could not and did not sell—namely, the mortgage interest? True, the sale made by the administrator is what is called a judicial sale, and the rule of *caveat emptor* applies. But, the second, or chancery sale, is equally a judicial sale, and the same rule applies to it. I ask these questions, without intending at this time to answer them.