# MAGRUDER *vs.* CAMPBELL.

40 611
100 579
40 611
104 347

[BILL IN EQUITY TO ENFORCE VENDOR'S LIEN FOR PURCHASE-MONEY.]

1. *Joinder in error.*—A joinder in error by the appellee is a waiver of all objections to the form of the appeal or the assignments of error.
2. *What is available on error.*—Where the purchaser at an administrator's sale, under an order of the probate court, is joined with the decedent's heirs-at-law, as a defendant to a bill which seeks to enforce an outstanding vendor's lien on the land, he can not complain on error of an irregularity in the appointment of a guardian *ad litem* for an infant heir.
3. *Discretionary matters not revisable on error.*—It is discretionary with the chancellor, in passing on a demurrer for the non-joinder of necessary parties, to order "that a decision on said demurrer stand over, to the end that the plaintiff may apply to amend his bill by adding" the necessary parties; and his action in the premises is not revisable on error or appeal.
4. *Same.*—When a cause has been submitted for final decree on pleadings and proof, and held up for decision in vacation or at the next term, the chancellor may, in his discretion, set aside the order of submission at the next term, and restore the cause to the docket, in order that the plaintiff may make application to vacate and set aside a previous order suppressing a deposition; and it is also discretionary with him to set aside the order suppressing the deposition.
5. *Certainty requisite in allegations of bill, as to terms of parol contract sought to be enforced.*—In a bill which seeks to enforce a parol contract for the sale of lands, great precision and nicety are required, and the terms of the contract must be averred with distinctness and certainty. Where the bill seeks to enforce, in favor of an assignee, a vendor's lien for the unpaid purchase-money of land, an averment that C., the vendor, "permitted the said M.," the purchaser, "to go into the possession of said land, and to occupy and cultivate the same, without rent or charge, but with the *understanding* that, when the said M. should become able to do so, he would repay the money so paid by the said C., with the interest thereon, and that the said C. would make him a title to said lands,"—does not, of itself, state the contract with sufficient certainty and definiteness to authorize a decree for the plaintiff; but it is sufficient, when construed in connection with the additional averments, that C., being indebted to plaintiff, transferred to him certain claims and demands which he held on M., "in which was included the said sum which M. had agreed with said C. to pay for said tract of land"; that plaintiff accepted the proposition, and M. also consented to it; and that plain tiff, by said transfer, "was substituted to all the rights of said C. as-

vendor, and has a right in equity to foreclose her lien upon said tract of land for the purchase-money."

6. *Assignment of debt and vendor's lien.*—A writing is not necessary to constitute a valid assignment of a debt for the unpaid purchase-money of land, or to make it effectual as an equitable assignment of the vendor's lien; and where the title remains in the vendor, the lien passes to the assignee with the debt, unless it is waived upon some consideration valid in law, or by some act operating by way of estoppel: neither the fact that the assignee accepted the transfer of the debt on the faith of the purchaser's promise to pay it in a short time, nor the fact that the purchaser's note was delivered up to him at the time of the transfer, nor these two facts combined, are sufficient to show such waiver.

7. *Competency of witness as affected by interest.*—Where a bill seeks to enforce an outstanding vendor's lien on land, which has passed into the hands of a sub-purchaser at administrator's sale under an order of the probate court, the heirs-at-law of the deceased purchaser and the sub-purchaser being joined as defendants, a distributee and heir-at-law of the deceased purchaser is a competent witness for the plaintiff, although his testimony tends to increase the assets of the estate.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JAMES B. CLARK.

THE original bill in this case was filed on the 26th June, 1858, by Catherine Campbell, against William R. Magruder, and the heirs-at law of John McKay, deceased; and sought to enforce an outstanding vendor's lien on land for the unpaid purchase-money. The land was sold and conveyed, on the 26th June, 1841, by W. T. Hodnett, to John D. Campbell, at the price of three hundred dollars in hand paid; and the deed to said Campbell was duly recorded. The plaintiff's claim to relief was founded on an alleged parol contract for the sale of the land by said Campbell to said John McKay, who was his father-in-law, and a subsequent transfer to her, by said Campbell, of the debt on McKay for the unpaid purchase-money. McKay died, in possession of the land, in 1855; and it was afterwards sold by his administrator, under an order of the probate court, and was bought at the sale by said Magruder. The second and third paragraphs of the bill, which contain all the allegations as to the contract between Campbell and McKay, and the subsequent assignment to the plaintiff of the debt on McKay, are in the following words:

Magruder v. Campbell.

"2. Your oratrix further showeth, that John McKay, who was then in life, but who is now deceased, was the father-in-law of the said John D. Campbell, and, at that time," (26th June, 1841,) "was much embarrassed in his pecuniary circumstances, and without a home; and that the said John D. Campbell, for the purpose of aiding his said father-in-law, permitted him to go into the possession of the said tract of land, and to occupy and cultivate the same without rent or charge, but, as your oratrix is informed and believes, and so charges, with the understanding that, when the said John McKay should become able to do so, he would repay the purchase-money so paid by said Campbell to the said Hodnet, with the interest due thereon, and that the said John D. Campbell would make him a title to the said land; and that the said John McKay went into the possession of the said tract of land with this understanding, and occupied it until his death, which occurred in the fall of the year 1855.

"3. Your oratrix further showeth, that before the first day of January, 1853, the said John McKay had relieved himself of his embarrassed condition, and was amply able to pay the purchase-money for the said tract of land; and that on the said first day of January, 1853, the said John D. Campbell was justly indebted to your oratrix, in about the sum of eight hundred dollars, for money before that time loaned to him by her; and that the said John D. Campbell, at that time, proposed" [to transfer to your oratrix?] "in payment of his said indebtedness, certain claims and demands which he held on the said John McKay, and which amounted to about the sum of eight hundred dollars, and in which sum was included the said sum of three hundred dollars, with the interest thereon, which the said John McKay had agreed with the said Campbell to pay for the said tract of land; and that your oratrix consented to said proposition, upon condition that the said John McKay was willing to the said arrangement, and would promise to pay your oratrix his said indebtedness in some short time; to which arrangement, the said John McKay, being present at the time, consented, and promised to pay your oratrix in some short time; and, upon the faith of his said promise, your

oratrix accepted the said claims and demands, in payment of her said demands against the said John D. Campbell, and gave up to the said Campbell his notes and other evidences of indebtedness which your oratrix held against him. And your oratrix avers, that the said John McKay did not pay said indebtedness in his life-time, nor has his administrator paid it since his death, nor any part thereof; and that the same, with the interest due thereon, is still due and unpaid. And your oratrix insists, that she has a lien upon the said tract of land for the payment of the purchase-money, to-wit, the said three hundred dollars, with the interest thereon; and she further insists, that by the transfer of said debt of three hundred dollars by the said John D. Campbell to your oratrix, she was substituted to all his rights as vendor, and that she has a right in equity to foreclose her equitable lien upon the said tract of land."

The prayer of the bill was, that an account might be taken of the purchase-money due, with interest thereon; that a lien on the land might be declared in favor of the complainant, for the amount so ascertained to be due to her; that the land might be sold to pay the amount, in default of payment being made within a specified time; and for other and further relief according to the nature of the case.

Magruder filed a demurrer to the bill, and assigned the following as grounds of demurrer: "1st, that the complainant has not by her said bill made such a case as entitles her to any discovery or relief in a court of equity against this defendant; 2d, that it appears by the said bill that the complainant's remedy is barred by the lapse of time; 3d, that the said bill does not embrace the whole matter; 4th, that the complainant is not entitled to the relief which she has prayed; 5th, that the general prayer for relief does not entitle the complainant to any relief; 6th, that the complainant has no interest in the subject, or title to the land; 7th, that, even if complainant has an interest in the subject, this respondent is not answerable to her, but to the person in whom is the legal title to the land, if any one; 8th, that there is a want of proper parties defendants, in that John D. Campbell is a necessary party in his own

right, and the infant heir of said John C. McKay, deceased, who was a son of said John McKay, is also a necessary party; and, 9th, that the bill is multifarious, and improperly confounds together distinct demands." In passing on the demurrer, at the November term, 1858, the chancellor delivered an opinion, in which he noticed most of the points presented, and held that' John D. Campbell was a necessary party in his own right, and that the bill made him a party only in right of his wife, as one of the heirs of John McKay; and further, that the infant heir of John C. McKay, deceased, who was a son of said John McKay, was a necessary party, and was not properly made a party by the prayer for subpœna against his guardian. He therefore made a decretal order, "that a decision upon said demurrer stand over, to the end that the plaintiff apply to amend his bill, so as to make said persons parties." The bill was amended accordingly, at the same term.

A guardian *ad litem* was appointed for the infant John McKay, before the bill was amended, and a formal answer was filed by the guardian; but, after the bill was amended by making him a party, and a subpœna on the amended bill was returned executed as to him, the record does not show any further proceedings against him until October, 1859, when another guardian *ad litem* was appointed in the stead of the first, who had removed from the county. Decrees *pro confesso*, on both the original and amended bills, were regularly entered against all the adult heirs of John McKay, deceased, one of whom was his daughter Susan McKay. The defendant Magruder filed an answer, denying all knowledge of the alleged contract between John D. Campbell and John McKay; averring, by way of plea, that such contract, if any was made, was verbal merely, and did not create any vendor's lien in favor of said Campbell; averring, also, that if any such contract was made, McKay was able to pay the debt, and did pay it before the 1st January, 1853; denied the alleged transfer by John D. Campbell to the complainant, or that it passed any vendor's lien; averred that the agreement between the complainant, John D. Campbell, and McKay, as alleged in the third paragraph of the bill, "if any such agreement was made, was in all

its parts a parol agreement, and no writing existed between the said John D. Campbell and McKay in regard to the said lands, or the payment of the purchase-money, and any transfer that may have been made to the complainant was only a transfer of a parol contract in regard to land, and no vendor's lien was created or passed to the complainant"; admitted that McKay died in possession of the land, and averred that he had at least a perfect equitable title, which title was acquired by respondent by his purchase at the administrator's sale ; averred, also, that both John D. Campbell and the complainant had notice of the administrator's sale, and neither made any objection, nor gave notice of the claim set up in the bill, although John D. Campbell was present at the sale ; averred, also, that McKay had the continuous and uninterrupted possession of the land for a period of at least fifteen years, and made valuable improvements ; insisted on the lapse of time as a bar to the relief sought, and demurred to the bill for want of equity. He also prayed that his answer might be taken as a cross bill against his co-defendants and the complainant, and that the legal title to the land might be vested in him by a decree of the court.

A formal answer to the cross bill was filed by the guardian *ad litem* of the infant, John McKay; and a joint answer was filed by all the adult defendants, including the complainant in the original bill. The material allegations of the answer are the same as those of the original bill, except the following statement: " Defendants admit, that the said contract between John D. Campbell and John McKay, for the sale of the said tract of land, was made in 1841 ; and that so far as a conveyance of the land was concerned, *that* rested in parol; but they state, that the said John McKay gave his note to the said John D. Campbell for the purchase-money, with other sums which he was owing to him ; which note was renewed from time to time, and other sums added to it, and which note was finally delivered up to said John McKay at the time complainant agreed to accept, in lieu of her demands against the said John D. Campbell, the indebtedness of the said McKay to said Campbell."

The complainant took the depositions of Mrs. Sarah McKay, who was the widow of said John McKay, and of Susan McKay, who was his daughter and a defendant to the bill. The record does not show any order for the examination of said Susan McKay as a witness. The defendant Magruder objected to the competency of these two witnesses, "because, if the allegations of the bill be true, the complainant has a subsisting debt against the estate of said John McKay, deceased, of which they are heirs and distributees, and they are therefore interested in enforcing a lien on the land, thereby making the land pay what otherwise they will lose as heirs and distributees of the estate." At the May term, 1860, the chancellor sustained the objections, and suppressed the depositions; but, at the May term, 1861, he suggested that his decision was erroneous, and allowed the complainant to apply for a revocation of the order; and at the November term, 1861, application having been made, and notice thereof given, he set aside and annulled the order.

The cause was submitted for a decree on the pleadings and proof, at the November term, 1860, and was held for consideration by the chancellor until the next May term, when, coming to the conclusion that the suppression of the depositions of Sarah and Susan McKay was erroneous, he made a decretal order, setting aside the submission, and restoring the cause to the docket, in order that the complainant might apply to have the order annulled. The complainant died in March, 1861, after having made and published her last will and testament, which was duly admitted to probate, and of which said John D. Campbell was appointed and qualified as executor. On the 20th June, 1861, said John D. Campbell, as such executor, filed a bill of revivor, and made the will of his testatrix an exhibit to it. Mrs. Sarah McKay, who was a sister of said testatrix, and her four children, who were defendants to the original bill, were the residuary and principal legatees under the will. The cause was again submitted for a decree on pleadings and proof, at the November term, 1861, and the defendant Magruder again objected to the depositions of Sarah and Susan McKay. At the same

term, the chancellor rendered a decree for the complainant, declaring a lien, ordering an account, &c.; and he overruled the objections to said depositions.

On the first submission of the cause, as the note of the evidence shows, the complainant offered in evidence "Exhibit A" to the original bill, which was a copy of the deed from Hodnet to John D. Campbell; to which the defendant Magruder objected on that account, but the chancellor overruled his objection. On the second submission of the cause, the exhibit was not offered in evidence; nor was any other evidence of said deed introduced, so far as the minute of the testimony shows. There were numerous objections to testimony, which require no particular notice.

At the May term, 1862, the master made his report under the reference, and it was confirmed. At the same term, by leave of the chancellor, Magruder filed an "amended and supplemental answer", in which he averred, that the suit was prosecuted, since the death of the original complainant, for the benefit of the residuary legatees and devisees under her will, who were co-defendants to the bill with him, and who, as the distributees and heirs-at-law of John McKay, deceased, had received the benefit of the money which said Magruder had paid on his purchase at the administrator's sale; and he pleaded these facts as an equitable estoppel. The chancellor held, that the new matter thus set up was no bar to the relief sought by the bill; and he therefore rendered a final decree in favor of the complainant, and ordered a sale of the land, in default of the payment, by a day certain, of the amount ascertained to be due on account of the unpaid purchase-money.

The appeal is sued out by Magruder alone, and the following errors are assigned by him: "1st, the chancellor erred in not sustaining the demurrer to the bill; 2d, in neither sustaining nor overruling the demurrer, and in permitting the plaintiff to amend the bill, without motion to that effect by plaintiff, and without costs or other terms; 3d, in suppressing the testimony of Reuben and William Kelly; 4th, in overruling the objections to the testimony of Anderson; 5th, in overruling the objections to the testi-

mony of Boone; 6th, in allowing the exhibit to the original bill to be read in evidence, without proof of the original deed; 7th, in the decree rendered at the May term, 1860, vacating the order of submission; 8th, in the decree setting aside the order suppressing the depositions of Sarah and Susan McKay; 9th, in allowing the testimony of Sarah and Susan McKay; 10th, in the decree rendered at the November term, 1861; 11th, in appointing Fielder guardian *ad litem* of John McKay, and in filing his answer; 12th, in the final decree rendered; and, 13th, in not dismissing the bill." There is a joinder in error on the part of the appellee.

N. S. GRAHAM, for appellant.—1. The facts on which the equity of a bill rests, must be averred with certainty, clearness, and precision, so that the court may see that the plaintiff has such rights as will warrant its interference, and the defendant be enabled to know what he is called on to defend.—*Cockrell v. Gurley,* 26 Ala. 405; *Jones v. Cowles,* 26 Ala. 612; *Read v. Walker,* 18 Ala. 332; *Spence v. Duren,* 3 Ala. 251. This rule is enforced with great strictness, where the bill seeks to enforce a parol contract for the sale of lands.

2. Tested by the above rule of pleading, the bill fails to show a valid contract, or indeed any contract, between Campbell and McKay, for the sale of the land. It alleges that Campbell *permitted* McKay to enter and occupy without rent or charge, under an *agreement* to purchase at some indefinite future time. The relations which existed between the parties, and the embarrassed pecuniary condition of McKay, furnish the explanation of the transaction, and show that it was a mere gratuity, or act of friendship and kindness on the part of Campbell. Nor is the testimony any more certain and definite, as to the terms of the supposed contract, than the averments of the bill. Leaving out of consideration the depositions of Sarah and Susan McKay, there is an entire absence of proof as to any contract; and when admitting their testimony, no definite contract is shown. The testimony shows, too, one fact which is inconsistent with the alleged contract; that is, that

McKay was in possession of the land in *January*, 1841, while the date of the alleged contract under which he went into possession is in *June*, 1841.— *Williams v. Barnes*, 28 Ala. 613 ; *Skinner v. Barney*, 19 Ala. 259 ; *Sims v. McEwen*, 27 Ala. 184.

3. The averments of the bill, as to the transaction by which the complainant became the owner of the supposed debt on McKay, are equally vague and indefinite. Instead of showing a valid transfer of the vendor's lien, if any existed, the inference is irresistible that the lien was waived. The bill avers, that the plaintiff "consented to the arrangement on the faith of said McKay's promise to pay in a short time"; and it says nothing of any note or writing. The answer to the cross bill first brings to light the important fact, that McKay had given his note to Campbell, and that said note was delivered up to him at the time of the alleged transfer of the debt to the complainant. If there was a vendor's lien in favor of Campbell, and if that lien could pass by a mere verbal transfer of the debt, (both of which propositions are denied,) these two facts show an express waiver of the lien. The promise to pay in a short time was taken in lieu of the lien, and the debtor's note was delivered up to him.— *Gilman v. Brown*, 1 Mason, 214 ; 4 Wheaton, 290.

4. Relief ought to have been denied on account of the staleness of the demand. Seventeen years had elapsed between the date of the alleged contract and the filing of the bill. The objection on account of the staleness of the demand was specified in the demurrer, and was also taken by plea and answer.— *Johnson v. Johnson*, 5 Ala. 90 ; *Juzan v. Toulmin*, 9 Ala. 663 ; *Wood v. Wood*, 3 Ala. 762. As the objection appeared on the face of the bill, it was available on demurrer for want of equity.— *Nimmo v. Stewart*, 21 Ala. 682.

5. The amended and supplemental answer set up facts which constituted a complete equitable estoppel, and which are not controverted. Magruder was an innocent purchaser, for valuable consideration, without notice of the claim now sought to be enforced against him. The parties interested in that claim stood by, and allowed him to pur-

chase, without giving notice of their claim; and now, after having received the benefit of the purchase-money paid by him, they bring forward an antiquated demand, which was never before heard of outside of their immediate family, and seek thereby to make him pay a second time for the land.

6. The infant John McKay, who was a necessary party to the bill, was never properly brought before the court. *Bondurant v. Sibley's Heirs*, 37 Ala. 565; *Clark v. Gilmer*, 28 Ala. 265.

7. Sarah and Susan McKay were incompetent witnesses for the plaintiff. Their testimony tended to increase the funds of the estate in which they were interested as distributees.

8. Exhibit A to the original bill was but a copy of the deed, and was not competent evidence.—*Portier v. Barclay*, 15 Ala. 439. Without it, there was no evidence whatever of the deed.

9. All the assignments of error are insisted on.

GUNN & STRANGE, *contra*.—1. That no note was given by the purchaser, does not affect the vendor's right to enforce his lien for the unpaid purchase-money.—*Crawford v. Barkley*, 18 Ala. 271.

2. The statute of frauds does not apply, where the purchaser takes possession, under a parol contract, with the consent of the vendor. Part performance takes the case out of the statute.—*Brewer v. Logan*, 19 Ala. 481; *Danforth v. Herbert*, 28 Ala. 274.

3. The vendor's lien passes by a transfer of the debt, and may be enforced by the assignee in his own name.—*Conner v. Banks*, 18 Ala. 42; *Kelly v. Payne*, 18 Ala. 370; *Griggsby v. Hair*, 25 Ala. 327.

4. The statute of limitations is no bar to the relief sought. *Driver v. Hudspeth*, 16 Ala. 348; *Duval v. McLoskey*, 1 Ala. 744; *Seabury v. Stewart & Easton*, 22 Ala. 207; *Sellers v. Hayes*, 17 Ala. 749.

5. Sarah and Susan McKay were competent witnesses for the plaintiff.—*Cook v. Patterson*, 35 Ala. 102; *Crawford v. Barkley*, 18 Ala. 270; Code, § 2302.

39

BYRD, J.—1. Magruder alone took the appeal, and assigns error; but there is a joinder in error by the appellee, which waives all objection to the form of the appeal or the assignments of error.

2. The eleventh assignment of error, although there is a joinder, cannot avail the appellant. Whether the guardian *ad litem* was properly appointed or not, is not a question in which he has any interest, or as to which, if the court below committed an error, he has any right to complain.

3–4. The 2d, 7th, and 8th assignments, raise questions within the discretion of the chancellor, and which are not revisable in this court.

The 6th is not well assigned, for "Exhibit A" to the original bill was not introduced in evidence on the final hearing, as appears from the note of the testimony offered.

5. The 1st, 10th, and 12th assignments may be disposed of together. The original bill, as noticed by the chancellor, very loosely sets out the contract between Campbell and John McKay, as to the sale of the land in controversy. The second paragraph shows what was the "understanding" of Campbell; but it fails to allege, positively and distinctly, what was the agreement of the parties as to the sale of the land, or that McKay made any contract to purchase the land. It is not sufficient, in a bill setting up, or attempting to set up, a parol contract for the sale of land, to aver what was "the understanding of the parties" as to the terms of the contract. They should be set out with distinctness and certainty, so that the court may determine for itself the legal effect of the contract. Great precision and nicety are required in pleadings, whenever a parol contract for the sale of land is sought to be enforced. But, when the second paragraph of the bill is taken in connection with the third, and construed together, we are of opinion that the terms of the contract are, though loosely, averred with sufficient certainty to authorize a court of equity to enforce the lien of the vendor.

The evidence of the witnesses Anderson, Boone, Sarah and Susan McKay, barely makes out the material allegations of the bill. Catherine Campbell became the owner of the debt due from McKay to Campbell, for the land, after the

fall of 1852 ; but there is no satisfactory proof of the terms of the contract under which she became the owner thereof; yet, from the declarations of McKay, the vendee, made after that time, probably in 1854, (as appears by the testimony of Anderson,) she was then the owner of the debt, and had a lien on the land, which he seemed to fear he would not be able to extinguish by the payment of the debt.

The answer of Magruder admits, that John McKay was able to pay the debt before 1853, and insists that he did pay it ; but he wholly fails to prove the payment. Neither Magruder, nor the administrator of McKay, has pleaded the statute of limitations as a bar to this proceeding.

6. It was not necessary that John D. Campbell should have assigned the debt to Catherine Campbell in writing, or by the delivery of an account or written assignment. Judge Story (2 Equity Jur. § 104) says: "Any order, writing, or *act*, which makes an appropriation of a fund, amounts to an equitable assignment of that fund." And further in the same section, "An assignment of a debt may be by parol, as well as by deed. As the assignee is generally entitled to all the remedies of the assignor, so he is generally subject to all the equities between the assignor and debtor."

The assignment of the debt is an assignment of the lien, unless the latter is waived by the assignee, or it is expressly or impliedly agreed between the parties that it is not to pass to the assignee. There is no proof of any such agreement; and although it is alleged in the bill that Catherine Campbell traded for the claim on John McKay, on his promise to pay in a short time, yet that is not a waiver of the lien, where no title to the land has passed from the vendor to the vendee ; and she was entitled, on the transfer of the debt, to all the equities of the vendor. Cases of implied waiver of liens have often arisen, where a title has been made to the vendee. There are many instances where a lien in such cases has been held to have been waived by implication ; but, in a case like this, we apprehend that only a waiver upon some consideration valid by law, or an act operating by way of estoppel, could defeat the right of the vendor, or any one claiming under him, to subject the land

to the payment of the purchase-money. However this may be, we hold, that neither the allegations aforesaid, nor the purchase of the land by appellant, as shown in the pleadings and proofs, could defeat the lien of the vendor, or his assignee.—*Cowles v. Jones*, 26 Ala. 612; *Bradford v. Harper*, 25 Ala. 337; *Griggsby v. Hair*, 25 Ala. 327.

7. The competency of the witnesses Sarah and Susan McKay is maintainable upon the following decisions: *Cook v. Patterson*, 35 Ala. 102; 18 Ala. 270; *Rupert & Cassity v. Elston's Executor*, 35 Ala. 79. If the motion to suppress portions of their testimony had been granted, the result would still be the same as to the merits of the cause; and therefore it is unnecessary to pass on the ruling of the chancellor thereon. And this remark is applicable to the rulings of the chancellor on the exceptions of both parties to the testimony of the witnesses Reuben and William Kelly, William Boone, and Charles Anderson; for, if the chancellor had ruled in accordance with the desire of the appellant, upon the motion and exceptions, so far as they were well taken, it would not have affected the result.

Having disposed of all the material questions noticed in the brief of appellant's counsel, we are of opinion that he has failed to show any error in the record, and the decree of the chancellor must be affirmed.

