FIELDING & GWYNN v. AMOS DU BOSE ET AL.

(Case No. 5215.)

1. ESTOPPEL.—If one holding a recorded mortgage lien on land, to secure the payment of a note, represents to another, about to purchase the land from the mortgagor, that there is no lien or incumbrance on the property, and that all liens had been discharged, and such other, influenced by such representations, purchases the land, with no actual notice of the mortgage, and pays for it, such mortgagee, as well as the assignee of the note after maturity and after such representations were made, is estopped from the enforcement of the mortgage, and the purchaser takes the title free therefrom.

APPEAL from McLennan. Tried below before the Hon. B. W. Rimes.

On the 30th day of October, 1882, Fielding & Gwynn, of New York city, filed their petition against Amos Du Bose, E. Dickey and C. H. Higginson, for a balance due on a note for the sum of $2,116.25, executed by the said Amos Du Bose to one I. C. Du Bose on the 23d day of January, 1878, and due on its face one day after date; which note had been indorsed to plaintiffs by said I. C. Du Bose on June 3, 1881; and also to foreclose a deed of trust or mortgage upon certain premises in Waco, then in the possession of Dickey and Higginson, which mortgage was executed by Amos Du Bose to secure the note, on the 14th day of May, 1878, and recorded in the records of McLennan county on the 15th day of May, 1878. By the terms of that mortgage the note was extended for six months from the date of the mortgage. Amos Du Bose made default. The defendants Dickey and Higginson answered, claiming title to the premises in controversy, free of incumbrance, by reason of acts and declarations on the part of I. C. Du Bose, at and about the time of the purchase of the premises in controversy from Amos Du Bose, by Greaves, Osborne and Cross, in August, 1878, said parties being the remote vendors of the defendants Dickey and Higginson.

Verdict and judgment in favor of the defendants Dickey and Higginson.

The defendants Dickey and Higginson pleaded that on the 1st day of August, 1878, by written contract, Greaves, Osborne and Cross purchased the mortgaged premises from Amos Du Bose, the mortgagor, for the sum of $5,000, to be paid as follows: $100 in cash, $400 to be paid on September 1, 1878, and notes aggregating $4,500 to be executed and delivered to Amos Du Bose by G., O. and C.; and Amos Du Bose covenanted, upon the payment of the notes, to execute to G., O. and C. full assurance of title in fee-simple, clear

of all incumbrances.    That I. C. Du Bose was the brother of Amos, and at the time of making said contracts, and before the payments were made, he, I. C. Du Bose, stated to A. E. Osborne, one of the purchasers, who specially inquired of him, that Amos Du Bose could make a good title to said lot, and that there was no incumbrance upon the property to prevent Amos from making a good title; that relying on the statement so made, and after Greaves and Cross were informed thereof, and all of the purchasers believed them to be true, the purchase was made, the $100 was paid at the time, and the $400 was paid afterwards, to I. C. Du Bose, or to Amos Du Bose, with full knowledge on the part of I. C. Du Bose; that afterwards Cross sold out his interest to Cassaday on 24th April, 1879, and the contract was then changed, so that the notes were never executed, but in lieu thereof Greaves, Osborne and Cassaday paid to Amos Du Bose $1,000, and gave their notes for $3,400 in different sums and maturing at different times, and thereupon Amos Du Bose executed to them his warranty deed for the premises, specially warranting against all incumbrances.    That I. C. Du Bose, knowing all these facts, advised and counseled with Cassaday in regard to the purchase by him of the Cross interest, prior to that purchase and payments, and knew of the notes being afterwards paid, and never in any way made known to Greaves, Osborne and Cassaday that he had a lien on the premises, and said purchase was made by G., O. and C., and they made said payments, without knowledge of any lien; that afterwards, Greaves and Cassaday sold out to Osborne, and Osborne sold to Streeter, and Streeter to Dickey and Higginson, and that all the purchase money on these several transactions had been paid; that I. C. Du Bose received the greater portion of the $1,000 paid to Amos Du Bose by Greaves, Osborne and Cassaday, with full knowledge as to the source from which it came; that defendants and those under whom they claim had been in possession of the premises since the purchase in 1878, and none of them had any knowledge of any claim by I. C. Du Bose, and every vendor stated to his vendee that the premises were unincumbered, before their respective purchases and payments, and none of them had any knowledge of this lien until this action was brought; that I. C. Du Bose, by his acts and declarations aforesaid, was estopped, as were also plaintiffs, who took said note after maturity.

1. Plaintiffs introduced the note and deed of trust in evidence, with all indorsements on each; and also an acknowledgment in writing from Amos Du Bose of the justness of the debt.

2. Defendants introduced a written contract between Amos Du Bose and James Greaves, A. E. Osborne and Thos. Cross, made August 1, 1878, wherein Amos Du Bose covenanted and agreed to make to the other parties a warranty deed, clear of all incumbrances, etc., to the premises in controversy, upon the full payment of the purchase money by said parties. The consideration of the purchase was $5,000, to be paid as follows: $100 cash; $400 on September 1, 1878; and balance in notes for different amounts, maturing from November 1, 1878, to March 1, 1879. There were also stipulations as to possession, insurance and forfeiture in case of non-payment of the purchase money notes, which are not material.

3. Defendants proved sale by Thos. S. Cross of his interest to W. A. Cassaday; a deed from Amos Du Bose to A. E. Osborne, James Greaves and William A. Cassaday, conveying the premises in controversy, which deed is dated April 24, 1879, and was recorded March 20, 1879; a release from Amos Du Bose for the vendor's lien on the above purchase, dated November 15, 1881, and recorded December 2, 1881; a conveyance by Cassaday and Greaves to Osborne of their interest in the premises, dated May 26, 1880, and recorded March 22, 1881. Conveyances from Osborne to Geo. D. Streeter, and from Streeter to Dickey and Higginson, the defendants, were also in evidence.

Defendants proved by W. A. Cassaday, who testified by deposition, the following facts in substance: That Amos Du Bose and I. C. Du Bose were brothers; witness purchased a one-third interest in the premises in controversy from Cross, date not remembered, and, by arrangement, Amos Du Bose made a deed to Greaves, Osborne and witness; witness does not remember date or consideration of deed, except that one of the payments was $1,000. " I. C. Du Bose knew I was about to purchase the interest of Cross in said premises, and he in person, with Amos Du Bose, approached me about the intended purchase, and advised me that it was a good thing and I ought to purchase. This was a week or ten days before the purchase. I. C. Du Bose was present at all interviews between me and Amos Du Bose during the pendency of the trade. I was going to draw the papers, but I. C. Du Bose and Amos Du Bose both said they would draw a paper and submit it to Greaves, Osborne and myself next morning. This occurred at my office over Waco National Bank. I. C. Du Bose drew the deed and was present when the trade was closed and the cash payment turned over to Amos. The reason I know that I. C. Du Bose was cognizant of all the facts in the trade and the payment of the sums of money to Amos Du

Bose by Greaves, Osborne and Cassaday, were that he approached me in favor of making the trade in the first place, and was present at all the interviews between Amos Du Bose and myself, advising Amos Du Bose how to proceed, and because I talked to him often during the trade; and he asked me when said sums were ready to be turned over to Amos, and was always with him when said sums were turned over to Amos. He saw the money actually paid. I. C. Du Bose never mentioned any incumbrance on said land, and the only lien he mentioned was one on two or three gin stands, the notes for which, he claimed, were turned over to him in settlement between Winship and himself. This was the only lien ever mentioned by I. C. Du Bose to me or in my hearing."

On cross-examination, the witness Cassaday further testified, as follows:

The date of the first conversation between I. C. Du Bose and myself was a week or ten days prior to the sale to Greaves, Osborne and myself by Amos Du Bose; this occurred in front of the Waco National Bank in Waco, Texas. Amos Du Bose, I. C. Du Bose and myself were together, and no others. I cannot give the exact language of the conversation. Amos approached me on my contemplated purchase from Cross, and I. C. Du Bose expressed himself as thinking it a good thing, and advised me to make the purchase. At a subsequent time prior to the purchase, Amos Du Bose, I. C. Du Bose, James Greaves, A. E. Osborne and myself met in my office to complete the articles of the trade.

The ground was thoroughly gone over and articles of trade arranged at the time, except as to Cross' sale to me. I. C. Du Bose took part freely in the conversation, which was general. I can only give the sum of what was said and done there, but the exact language at this date it is impossible for me to give. In answer to a direct question to Amos Du Bose, propounded by A. E. Osborne, as to whether there was any lien, and why Amos had not recorded releases from Winship and J. G. Harrison, Amos replied that there were no liens except those for which he had releases and would record. I. C. Du Bose substantiated Amos' statement, and said Amos had everything released straight, and was in duty bound to record the releases. I never knew of the deed of trust from Amos to I. C. Du Bose, and the latter never hinted such a deed, and many times denied that any lien existed except such as Amos had releases for. I had no actual notice of such a deed of trust until the fall of 1882, when Dr. Geo. Streeter notified me of it. I never heard I. C. Du Bose mention any deed of trust in any manner; neither did

Amos; and not knowing anything of said deed of trust, of course I never heard I. C. Du Bose deny its existence. I never heard I. C. Du Bose deny having a deed of trust from Amos, or deny claiming under the same, but he did say there were no liens existing except such as Amos Du Bose held unrecorded releases for. I. C. Du Bose was present at all interviews, and he either wrote the deed himself or instructed Amos how to draw it. I think I. C. Du Bose drew the deed. He had it in his possession the day the trade was made. I don't know where it was written. I. C. Du Bose was present when it was delivered and payment made. Greaves and I sold out to Osborne, who paid the purchase money notes in full through Anderson & Flint. I know of no release of the trust deed of I. C. Du Bose, and never heard him mention it in any manner, up to this time.

James Greaves testified, for defendants, that during the time himself, Osborne and Cross were negotiating for the property, I. C. Du Bose assisted Amos in selling the property, but the witness, during that time, never heard I. C. Du Bose say that he did or did not have a deed of trust on said property; that he, witness, heard A. E. Osborne ask Amos Du Bose, in the presence of I. C. Du Bose, if all the prior *vendors'* liens on said property had been satisfied, and I. C. Du Bose said they had all been paid off and that Amos had releases and would have them recorded; and I. C. Du Bose said that Amos could make a good title to the property, and that any title we took from Amos would be good. Witness did not examine the records to ascertain about the condition of the title, but intrusted that matter to Osborne, who did most of the trading and negotiating about the matter. Witness was present at several of the talks about the trade, at which Amos and I. C. Du Bose were present, but he never, at any time, heard I. C. Du Bose say anything about having or not having a deed of trust on the property; but he did say that any title Amos would make would be a good title.

A. E. Osborne testified for defendants substantially as Cassaday did as to the original contract of purchase and payments, etc., and, in addition thereto, the following upon the question of estoppel: That I. C. Du Bose was present with Amos Du Bose during the negotiations, and that pending the execution of the deed from Amos to Greaves, Osborne and Cassaday the witness asked I. C. Du Bose if said property was free from all liens, meaning prior liens, as witness intended, to which I. C. Du Bose replied that said liens had all been paid off, and that Amos had releases of said liens and would record them. I. C. Du Bose said that all liens on said prop-

erty had been paid off and the property was clear of all liens, and any title that Amos would make would be good. Witness relied on the statement of I. C. Du Bose, and made no further examination into the title. During the negotiations I. C. Du Bose never said that he did or did not have a deed of trust on said property; he never mentioned a deed of trust, but said the property was clear of all incumbrance.

There was much other and conflicting testimony.

*Clark & Dyer*, for appellants, cited, on estoppel: Page *v.* Arnim, 29 Tex., 54; Burleson *v.* Burleson, 28 Tex., 383; Scoby *v.* Sweatt, 28 Tex., 713; Bigelow on Estoppel, 3d ed., pp. 477, 484, 490, 502, 520, 529, 541; 2 Pomeroy's Eq., secs. 805, 812; Markham *v.* Carothers, 47 Tex., 22; H. & T. C. R. Co. *v.* Terry, 42 Tex., 451; Andrews *v.* Smithwick, 20 Tex., 111; Smith *v.* Montes, 11 Tex., 24; Moore *v.* Bowman, 47 N. H., 494; 2 Pomeroy's Eq., sec. 813.

*Anderson & Flint*, for appellees.

DELANY, J. COM. APP.— The plaintiffs received from I. C. Du Bose, long after its maturity, the note on which this suit is brought. Whatever defenses, therefore, could have been successfully urged against Du Bose, had he brought the suit, would be good against the plaintiffs. The question then is: Could the plea of estoppel, on which the defendants rely, have been maintained against I. C. Du Bose as plaintiff?

In the case of Page *v.* Arnim, 29 Tex., 71, the court, after remarking that the question of estoppel *in pais* had been somewhat elaborately discussed in the cases of Burleson *v.* Burleson and Scoby *v.* Sweatt, 28 Tex., 383, 713, proceed as follows: "In the first of those cases it was held that the tacit presence of the owner, and his knowledge of the sale, will not estop him if the purchaser is otherwise informed of the true state of the title. And in the second it was decided that the acts from which the estoppel is claimed to spring must have in some way induced or influenced the purchaser; that the basis upon which such estoppel rests is actual or constructive fraud on the part of the owner, or such facts as would be tantamount to a fraud, if he were permitted to recover the property." These cases have been recognized and followed in our courts.

In the case before us, counsel for appellants present us with six propositions, the last three of which seem to go a little beyond the doctrine generally recognized by our courts. They state their fifth proposition thus: "The party invoking the estoppel must have been

induced to take action and change his position *solely* because of the representation." The correct rule is that above quoted, that the "acts from which the estoppel is claimed to spring must have in some way induced *or influenced* the purchaser." To show the sense in which counsel use the word "induced," we quote the following passage from their argument: " A. E. Osborne, another of the original purchasers, testifies as follows: ' I relied on the statement of I. C. Du Bose and made no further examination into the question of title, and made the trade and took the deed for the property to myself, Greaves and Cassaday;' but (say counsel) he does not say that the representations constituted any inducement to the trade, and, but for said representations, he would not have made the purchase." Nor was it necessary that he should have said so. In order to estop I. C. Du Bose in this case it was not necessary that he should have originally suggested this trade or have brought it about, or that he should have contributed materially to its consummation.

The case against Du Bose is not that he caused the purchasers to make the trade, but that by his fraudulent representations he put them off their guard, and prevented an investigation on their part which would have discovered his lien and have enabled them to guard against it. At the time of the first negotiation for the purchase between Greaves, Osborne and Cross on the one side, and Amos Du Bose on the other, the lien of I. C. Du Bose was of record in the county. In that state of the case I. C. Du Bose was not bound to come forward and tell these parties that he had a lien upon the property. Having put this mortgage on record, and thus given the notice which the law required him to give, he might safely suppose that all subsequent purchasers from Amos Du Bose would examine the record and ascertain the existence of his lien. Bales *v.* Perry, 51 Mo., 449; Sulphine *v.* Dunbar, 55 Miss., 255. He was not bound to interfere in order to protect those who had the means of protecting themselves, especially if he was in no way connected with the particular transaction. But this is as far as the authorities go. If he interfered in the matter, and by false representations prevented inquiry as to his lien by the purchasers, he cannot afterwards set it up against them. David *v.* Park, 103 Mass., 501; Kingman *v.* Graham, 51 Wis., 233.

Precisely what information was given at the first negotiation is not entirely clear from the evidence. According to the witness Cross, who was one of the parties, something was said about a lien, but whether it was upon the land, or upon some personal property which was then on the land, the witness could not say. The lien of

I. C. Du Bose was upon the land as well as upon the personal property. About a year afterwards a second negotiation took place, in which Cassaday took the place of Cross as a purchaser. At this time the whole matter was canvassed and I. C. Du Bose took an active part in the entire transaction. In answer to a question whether there were any liens upon the property, he answered that they had all been discharged, and that Amos Du Bose held the releases, which should be recorded. This seems to have quieted all apprehension, and the purchase was made.

Counsel for appellants insist that as Du Bose did not specifically mention his own lien, he ought not to be held estopped. But the language was such as would include his own lien; and, in the second place, there is no evidence in the record that there was at that time, or had been, any other lien upon the property. There can hardly be a doubt that his declaration deceived the parties to their prejudice; and it is difficult to believe that he did not know that he was deceiving them.

The judgment should be affirmed.

AFFIRMED.

[Opinion adopted February 13, 1885.]