# Lindsay *v.* Cooper.

*Bill in Equity to enforce Trust of Legal Title, by Purchaser's Privies against Claimants under Vendor.*

1. *Sale of land by vendor as administrator of purchaser; estoppel.*
If the vendor of land, having retained the legal title, or having a lien for the unpaid purchase-money, becomes himself the administrator of the purchaser's estate, and sells the land as administrator, under a probate decree, for the payment of debts, giving no notice of his own lien or title, he will be held estopped in equity from afterwards asserting it against the purchaser at that sale, who had no actual notice of it, or against his privies; and this estoppel is equally operative against the heirs of the vendor, and against all subsequent claimants under him, unless there be an exception in favor of a purchaser for valuable consideration without notice, as to which no opinion is expressed.

2. *Purchase at judicial sale.*—A sale of lands by an administrator, under a probate decree, is a judicial sale, to which the doctrine of *caveat emptor* applies: the purchaser acquires only the title which the decedent had, and is charged with notice of all the equities which attached to it. (The court "does not share in the doubt" intimated in *Wilson v. Hall*, 83 Ala. 539, as to the limitation of the doctrine of *caveat emptor* to defects disclosed by an examination of the chain of title, excluding secret equities not discoverable by ordinary diligence.)

3. *Sale of lands under probate decree, on defective petition; laches and prescription, as against infant seeking to enforce equitable estoppel.*
If the sale of the lands by the vendor, as administrator of the deceased purchaser, was void because founded on a petition wanting in jurisdictional allegations, and therefore might be avoided, or could not be enforced as between the heirs of the purchaser and sub-purchaser; this would not affect the right of the heirs of the sub-purchaser (or purchaser at the administrator's sale) to enforce their equitable estoppel against the vendor or his privies *in estate*; and although the statute of limitations might bar the adult heirs, if the decedent's privies held adverse possession for ten years against the purchaser at the administrator's sale, this would not be the effect of their possession in recognition of the contract of sale, followed by the subsequent enforcement and payment of the notes for the purchase-money; nor would the right of the complainant, who was an infant when such adverse possession commenced, and who filed her bill to enforce the equitable estoppel within three years after attaining her majority, be affected by *laches,* the statute of limitations, or the doctrine of prescription.

4. *Effect and operation of estoppel.*—Estoppels in equity are protective only, and are to be invoked as shields and not as offensive weapons: their operation should be limited to saving harmless, or making whole, the person in whose favor they arise, and they should never be made the instrument of gain or profit.

APPEAL from the Chancery Court of Colbert.
Heard before the Hon. THOMAS COBBS.

[Lindsay v. Cooper.]

. The opinion contains a full statement of the facts, and renders any additional statement unnecessary; while the briefs of counsel state the facts deemed material to the case as presented by their points and authorities.

J. B. MOORE, with whom was R. C. BRICKELL, for appellant. (1.) Price, as administrator of Walker's estate, filed a petition to obtain an order for the sale of the land, alleging that Walker died "seized and possessed" of it; and he obtained the order, sold the land under it, and Winston became the purchaser. If Price was now living, he would be estopped from claiming the land, and the recitals in his petition would be conclusive evidence against him that it belonged to Walker.—21 Ala. 534; 16 Ala. 714; 64 Ala. 388; 68 Ala. 409; 75 Ala. 315; 84 Ala. 570; 1 Perry on Trusts, § 433; 2 Ib. §§ 463, 864; *Putnam v. Taylor*, 117 Penn. St. 570; *Miles v. Lee*, 60 Iowa, 168; 66 N. C. 564; 25 Wisc. 310. That "seized and possessed" means a holding by the rightful owner, see 49 Ala. 566; 1 Wash. R. P. 34; 20 Ala. 161; 4 Kent's Com. 2; Dev. Deeds, § 885.

(2.) Defendants claim title under and through Price, and they are bound by the estoppel as his privies.—Herm. Estoppel, §§ 20, 145; 2 Ib. §§ 586–7; 9 Ala. 357; 22 Ala. 814; 14 Ala. 370; 51 Ala. 377; 10 Ala. 511; 31 Ala. 108; 25 Ala. 120; 62 Ala. 143; 60 Ala. 521; 2 Pom. Equity, §§ 683, 813; *McCravey v. Remson*, 19 Ala. 437; *Hendrix v. Brown*, 61 Ala. 296; *Hendricks v. Kelly*, 64 Ala. 388; *Taylor v. A. & M. Asso.*, 68 Ala. 229; Rorer on Judicial Sales, §§ 444–5.

(3.) Defendants claim, also, under one Barton, who bought at a sale made by Jones as administrator of Price. This was a judicial sale, to which the doctrine of *caveat emptor* applies; and a purchaser at such sale acquires only the interest which was sold, and can not claim protection as a purchaser for value without notice. There is no warranty of title, and the purchaser can not complain if his title should prove worthless.—49 Ala. 499; 53 Ala. 152; 61 Ala. 472; 62 Ala. 271; 56 Ala. 321; 58 Ala. 115.

(4.) Complainant was born in March, 1864, and brought this suit on the 10th September, 1887, within three years after attaining her majority. Thos. E. Winston, her father, died in August, 1869. Yet the chancellor held her barred by twenty years adverse possession.

(5.) Steele was the verbal vendee of Winston, and acquired no adverse possession against his vendor, because he did not pay the purchase-money.—17 Ala. 749; 36 Ala. 308; 57 Ala. 304; 66 Ala. 444; 67 Ala. 221; 70 Ala. 567; 68 Ala. 102; 73 Ala. 222; 3 Brick. Digest, 17, § 23.

[Lindsay v. Cooper.]

E. W. PETTUS, COOPER & COOPER, ROULHAC & NATHAN, and JACKSON & SAWTELLE, *contra*.—(1.) The sale of the land by Price as Walker's administrator created no estoppel against him, because it did not affect his individual interest, but passed only the interest of Walker's estate. Walker was in fact possessed of the land, and had legal seizin. His interest was subject to sale for the payment of debts, and might be sold by the Probate Court for that purpose; and that court had no jurisdiction to sell, and did not undertake to sell, any other or greater interest than he had.—*Allen v. Kellam*, 69 Ala. 442; *Tayloe v. Dugger*, 66 Ala. 444; *Inman v. Gibbs*, 47 Ala. 305; *Jennings v. Jenkins*, 9 Ala. 285; *Vaughan v. Holmes*, 22 Ala. 593; *Ketchum v. Creagh*, 53 Ala. 224; *Owen v. Slatter*, 26 Ala. 550; *Fielder v. Childs*, 73 Ala. 572. The sale by Price was a judicial sale, to which the doctrine of *caveat emptor* applies.—*Owen v. Slatter*, 26 Ala. 550; *Burns v. Hamilton*, 33 Ala. 210; *Fore v. McKenzie*, 58 Ala. 115; *Bland v. Bowie*, 53 Ala. 152; *Boykin v. Cook*, 61 Ala. 472; *Lovelace v. Webb*, 62 Ala. 271; *Turner v. Teague*, 73 Ala. 554. There being no warranty, there can be no estoppel. Bigelow on Estoppel, 322–6, 333, 375; *Chapman v. Abraham*, 61 Ala. 115; 7 John. 228; *Swann v. Gaston*, 87 Ala. 574; *Booker v. Waller*, 81 Ala. 562; *Hoxie v. Finney*, 16 Gray, 332; *Caperton v. Hall*, 83 Ala. 173. No estoppel can be based on the recitals or contents of the title-bond, for it only binds Price to convey the interest of Walker's estate; and hence the cases based on representations or deceptive conduct, as *Prickett v. Sibert*, 75 Ala. 315, and others cited, have no application.

(2.) But no estoppel arose from the sale for the further reason, that the sale was void, being founded on a decree which did not prescribe the time and place of sale, and on a petition which did not allege the existence of debts against the estate.—*Brown v. Brown*, 41 Ala. 215; *Cruikshank v. Luttrell*, 67 Ala. 321; *Hendricks v. Kelly*, 64 Ala. 388; *Comer v. Hart*, 79 Ala. 394; *Owens v. Childs*, 58 Ala. 113; *Abernathy v. O'Reilly*, 90 Ala. 495. A void judgment or decree is a mere nullity, and can neither confer nor divest legal rights.—*Eatman v. Eatman*, 82 Ala. 227; *Nelson v. Boynton*, 54 Ala. 368; *Allen v. Kellam*, 69 Ala. 442; 1 Herm. Estoppel, 50–52; Big. Estoppel, 171.

(3). The defendants are entitled to protection as purchasers in good faith, for valuable consideration, and without notice.—*Wilson v. Holt*, 83 Ala. 539; *Barclift v. Lillie*, 82 Ala. 319; *Gresham v. Ware*, 79 Ala. 198; *Barton v. Barton*, 75 Ala. 402; *Cresswell v. Jones*, 68 Ala. 420; *Mur-*

*ray v. Ballou*, 1 John. Ch. 574; *LeNeve v. LeNeve*, 2 L. C. Equity, 195; *Wells v. Morrow*, 38 Ala. 125; *Thames v. Rembert*, 63 Ala. 561.

(4.)  If the equities of the parties were equal, each claiming as purchasers for valuable consideration without notice, the legal title must prevail.

(5.)  The complainant's demand is stale, and is barred by laches and lapse of time.

McCLELLAN, J.—It is sought by the bill in this case to declare and enforce a trust against the respondents in respect of an one-third undivided interest in a certain quarter-section of land, to which they have the legal title, and of which they have been in possession, actually or by privity, since 1870. Complainant's theory is, that she has a perfect equity in and to that interest; that the respondents hold the legal title in trust for her, and should be decreed to execute that trust by vesting title in her, and held to account for rents and profits accruing pending the existence of the trust.  The facts are complicated, but the evidence which goes to establish them is substantially free from conflict.  We encounter no difficulty in finding them to be as follows, as far as material :

William H. Price became seized and possessed of the land in fee simple absolute about the year 1853, and continued in its occupancy for four or five years.  In 1857, or 1858, he sold the land by executory contract to Isaac H. Walker, and put the purchaser in possession.  Early in 1860 Walker died, without having paid the purchase-money to Price, and without having received a conveyance of the land.  Price became Walker's administrator, and, in that capacity, took possession of the tract in controversy, together with other lands held by the intestate; and applied to the Probate Court for an order to sell all these lands for the payment of decedent's debts. An order of sale was made; and, acting under it, Price sold on December 17th, 1860, all of said lands as the property of the intestate.  At this sale Thomas E. Winston became the purchaser of the quarter-section in question.  In accordance with the terms of the sale, the purchaser executed his several notes with sureties for the purchase-money, and Price executed to him a bond for title, binding himself as such administrator to convey all the right, title and interest of the intestate upon payment of the purchase-money notes.  Winston was let into possession immediately, and rented the land for the year 1861 to John A. Steele, who was a surety on the notes given by Winston to Price as Walker's administrator.  At the close of 1861 Steele and Winston had a parol understanding and

agreement, by the terms of which the former was to take the land off Winston's hands, and assume and pay the purchase-money notes as they matured. Under this agreement, Steele continued in possession and cultivation of the land as the owner of it until 1870, but paid nothing on the notes. Meantime Price died in 1865, without asserting any individual claim or title to the land, and without taking any steps as Walker's administrator to collect the notes of Winston. On December 18th, 1865, Theophilus A. Jones qualified as administrator of Price's estate, and soon afterwards reported and had the estate declared insolvent; but it does not appear that he advanced any claim to this land prior to 1870. Winston died in 1869; and in 1870, Steele delivered the possession of the land to Jones as Price's administrator, by whom it was sold as assets of Price's estate, under probate order on April 24th, 1872, to Clark T. Barton; the sale being regularly reported and confirmed, and conveyance executed to the purchaser as ordered by the court. The respondents, Mary K. Cooper, Minerva Winston and Calvin G. Jackson, hold by mesne conveyance from said Barton.

After Price's death, one Weatherford became the administrator *de bonis non* of the estate of Isaac Walker. Weatherford having died, this administration was committed to Abner W. Ligon, general administrator for the county of Franklin, on January 25th, 1869. It does not appear that either Weatherford or Ligon ever made any efforts to realize on the Winston notes, by proceedings against the makers thereof personally, or against the land, until 1872. Then Ligon, as administrator of Walker, filed a statement of the notes as a claim against the estate of Thomas E. Winston. Lewis B. Thornton, having qualified as administrator *de bonis non* of Winston's estate, reported the same insolvent, and a decree passed so declaring. The claim by Ligon was filed while the estate of Winston was being administered under this decree as insolvent, and pending this state of things Ligon obtained an order to sell the Winston notes, along with other claims belonging to Walker's estate. At a sale under this order, James E. Moore bought these notes at the price of fifty dollars, which was distributed to the creditors of Walker's estate, and was let into the representation of the claim based upon them against Winston's estate. This claim was contested by Winston's administrator, but whether meritoriously or not we are not advised, as the objection was held not to have been seasonably made, and the estate was upon that ground adjudged to be liable for it (*Thornton v. Moore*, 61 Ala. 347), and the administrator compromised it with Moore by paying one

thousand one hundred dollars therefor. It appears further that no cognizance was had of the land, or the interest of Winston in it, in the administration of his estate; it was not administered. The estate, though declared insolvent, was not so in fact; or rather, by compromises and the like, effected by Thornton with creditors, their demands were satisfied, and a considerable sum remained which was distributed to the intestate's children. The present complainant is one of these children. There are two others, who do not join in this bill. The complainant was born in March, 1864, and filed this bill September 10th, 1887, within three years after attaining her majority.

Whether or not Price and his privies are estopped to assert his legal title against Winston and those claiming under him and, among the rest, the present complainant, is a prominent, if not, indeed, a vital question in the case. The facts specially bearing upon this inquiry, which have not before been adverted to, are the following: In his petition to the Probate Court for an order to sell this along with other land as the administrator of Walker, Price alleged that his intestate died "seized and possessed" of all the lands sought to be sold; and this averment is not in any manner qualified by the statement of any other fact or circumstance in limitation of Walker's ownership. There is no intimation that Price himself and in individual capacity held the legal title, naked or otherwise, or any beneficial interest in the land, or any lien for the unpaid purchase-money. The order of sale which passed in response to this petition is likewise without intimation that any less estate than an unincumbered fee in the land was to be sold. The sale under this order was made by Price in person. It is not pretended for respondents that, at the time and place of the sale, or at any other time and place, Price advanced, asserted or made known in any manner to those present at the sale, or to Thomas E. Winston who then purchased the land, that he, Price, had the legal title to the land and a lien upon it for the purchase-money due from Walker to him, or either, or that any other or less estate than the unincumbered fee was in the estate of his intestate, or intended to be passed by the sale he was then making. To the contrary, this record can not be read without enforcing the conclusion, that he gave no notice whatever of his personal title, or interest or claim in and to the property. Persons present at the sale testify, that the land was sold by Price as the property of Walker's estate. The bond for title, which he executed in his representative capacity to Winston, recites that the land was sold as Walker's, and evidences an undertaking to convey the title thereto as

fully as it was vested in the obligor as Walker's administrator; and all this may be looked to, not indeed as importing an estoppel by the bond, but as admissions of Price against interest, going to negative any reservation or notice of his personal interest at the sale to Winston. And beyond all this, the uncontroverted evidence is that Winston purchased the land at its full market value, bidding therefor $15.02 per acre, amounting to $2,403, for the one hundred and sixty acres, and executed his notes for that sum. Moreover, the report of the sale imports no intimation that any less than an unincumbered fee in the land was sold. On these facts—that Price alleged the seizin and possession of his intestate of the land, and asked an order to sell, thereby importing a purpose to sell an estate in fee (*McKenzie v. Baldridge*, 49 Ala. 564); that there is nothing in the petition, or the order of sale, or report of sale, or bond for title, or the notes accepted by Price, in any degree indicating that less than the fee was intended to be or was in fact sold; that, on the contrary, the manifest implication from each and all of these papers is that Walker's estate was in the unincumbered ownership of the land; that those present at the sale, and who testify in this case, in no wise suggest that any notice was given by Price of any individual interest or claim on his part; and that the land fetched its full market value, more indeed per acre than the other lands of the estate lying adjacent to it, as appears from the report of sale—we can not, without the greatest violence to the probative force of evidence, reach any other conclusion than that Price, selling the land in person, as Walker's administrator, gave no notice or intimation whatever of his individual rights in respect of it; but conscious, as he must have been, that the purchaser was acting upon the assumption and in the belief that he was getting the land free from all incumbrance and claim of adverse title, allowed him to proceed upon that assumption and in that belief to a change of his position to his detriment in taking upon himself a pecuniary liability evidenced by the notes, which doubtless could have been enforced at the time, and which were subsequently enforced against his estate. These facts involve every element of an estoppel *in pais* upon Price, conceding that he had the legal title, or a lien for unpaid purchase-money, or both, to and on the land when he sold it as Walker's administrator, to subsequently assert that title, or enforce his lien against the purchaser at the sale. If he had the title and lien, or either, he must have known it. He must be holden to have known that Winston bought in the belief of the non-existence of any such adverse claim or right in him, or in any body else. It can not be supposed that

any sane man would pay the full value of property, not for
the property, but for the privilege of paying its full value over
again to its real owner, and thus acquiring it from the latter.
Price not only stood by in a sense, and saw Winston buy his
land from another, believing that other to be its owner, and
said nothing, but he represented that other in the transaction,
and as his agent, in legal contemplation, participated in the
sale of his own property to Winston, knowing that Winston's
purchase was influenced by the belief, which Price knew to
be ill-founded, that the property belonged to the principal,
Walker's estate, and not to the agent, Price; and he said
never a word of warning to the purchaser, but consciously,
and hence, intentionally and willfully, as the law looks upon
his conduct, permitted Winston to buy and pay for, in the
sense of becoming legally liable for the purchase-money, that
which he professed to sell as administrator, but which he knew
he did not own as administrator, and could not sell. In all
reason, and by all the authorities, it was Price's moral and
legal duty to speak, and to give notice of his claim and rights
in the premises. And "his silence, when in good conscience
he ought to speak, shall close his mouth when he would speak."
Having been silent when every consideration of moral and
legal obligation was upon him to apprise the purchaser, acting
on the assumption, known to Price, of the non-existence of
the facts which Price could and should have disclosed to him,
having changed his legal *status* to his detriment in conse-
quence of Price's failure to discharge this duty, the law holds
the latter estopped now to say that the real facts were other
than he wrongfully allowed the purchaser to believe them to
be at the time of the sale; on the familiar doctrine, "that
where one knowingly suffers anothers, in his presence, to pur-
chase property to which he has a claim or title, which he
willfully conceals, he will be deemed under such circumstances
to have waived his claim, and will not afterwards be permitted to
assert it against the purchaser."—Herman on Estoppel and
Res Adjudicata, pp. 1054 *et seq.;* Bigelow on Estoppel, pp.
476 *et seq.; Dewey v. Field,* 4 Metc. (Mass.) 381; *Stephens
v. Bard,* 9 Cowen, 274; *Farill v. Roberts,* 50 N. Y. 222;
*Green v. Smith,* 47 Vt. 268; *Fielding v. DuBose,* 63 Texas,
631; *Wells v. Pierce,* 27 N. H. 503; *V. & M. R. R. Co. v.
Ragsdale,* 54 Miss. 200; *Money v. Richetts,* 62 Miss. 209;
*Copeland v. Copeland,* 28 Me. 525; *Raley v. Williams,*
73 Mo. 310; *Bullis v. Noble,* 36 Iowa, 618; *Wendell v. Van-
Rensellaer,* 1 John. Ch. 344; *Heard v. Hall,* 16 Pick. (Mass.)
457; *Dickerson v. Colgrove,* 100 U. S. 578; *Pickard v. Sears,*
6 Ad. & El. 469; *Markham v. O'Connor,* 52 Ga. 183; s. c.,

[Lindsay v. Cooper.]

21 Amer. Rep. 249; *Drake v. Glover*, 30 Ala. 382; *Burns v. Taylor*, 23 Ala. 255; *Williamson v. Ross*, 33 Ala. 509; *David v. Shepard*, 40 Ala. 587; *Leinkauff v. Munter*, 76 Ala. 194.

The estoppel thus on Price is equally efficacious in its operation upon all who claim under or through him. They too will not be heard to say, as against Winston, or his privies, that Price, at the time of his sale as Walker's administrator, had any claim or title to the land in his individual capacity. *Wood v. Seely*, 32 N. Y. 105; *Parker v. Crittenden*, 37 Conn. 148; *International Bank v. Bowen*, 80 Ill. 541; *Kinnear v. McKey*, 85 Ill. 96; *Drake v. Glover*, 30 Ala. 383; *Kennedy v. Brown*, 61 Ala. 296; *Hendricks v. Kelly*, 64 Ala. 388; *Taylor v. A. & M. Association*, 68 Ala. 229; *Wortham v. Gurley*, 65 Ala. 356.

And this principle has been carried, in the decisions of this court, to the extent of giving effect to the estoppel even upon *bona fide* purchasers for value and without notice of the facts operating the estoppel upon their grantor. The one fact that they are privies of him who is estopped, and in respect of the estate upon which the estoppel operates, is, according to these cases, quite sufficient to estop them also, notwithstanding their good faith, want of notice, and payment of a valuable consideration.—*McCravey v. Remson*, 19 Ala. 430; *Adler v. Pin*, 80 Ala. 354.

This doctrine, however, does not appear to be fully supported by the weight of authority, and, its soundness being questioned by some members of the court as now constituted, our conclusion, that the respondents are bound by the estoppel which rested on Price, will be rested upon another consideration. They are purchasers, it is true, in good faith, without actual notice, and for value. They are also, however, purchasers at a judicial sale, the sale made by Price's administrator to Barton in 1872 under an order of the Probate Court. To such sales the rule of *caveat emptor* applies in its utmost vigor and strictness. The court orders the sale, in such cases, only of such interest and estate and rights in the premises as he had and could have asserted; no more, no less. The purchaser succeeds to his rights and attitude in respect of the property sold, "takes his shoes," stands in his place, acquires his interest as the same existed in his hands, subject to all infirmities of title then attaching to the estate, and to all equities, known or secret, which operated a limitation upon the nominal or apparent estate of the intestate in his life-time. The purchaser buys at his peril; he takes upon himself the risks of any outstanding rights that could have been asserted

against the decedent; and if by reason of the existence of such rights, whether known or not, or discoverable or not, he takes nothing by his purchase, he can not complain.—*Perkins v. Winston*, 7 Ala. 855; *Burns v. Hamilton*, 33 Ala. 210; *Bland v. Bowie*, 53 Ala. 152; *Fore v. McKenzie*, 58 Ala. 115; *Lovelace v. Webb*, 62 Ala. 271.

There are some expressions to be found in opinions handed down here, indicative of a doubt in the minds of the writers as to "whether the rule of *caveat emptor*, which applies to judicial sales, will go further than to cover those defects which may be disclosed by an examination of the chain of title; or, at least, whether it would cover such secret equities as no ordinary diligence could discover."— *Wilson v. Hall*, 83 Ala. 539. We do not share in this doubt. To give that limitation to the doctrine of *caveat emptor*, would be to emasculate it altogether. To hold that the purchaser at an administrator's sale made under an order of the court of probate need only look out for defects disclosed by the proceeding in which the order is entered, and by the muniments of the intestate's chain of title, would be to put such purchaser upon the footing of a vendee from an individual, and to strip the fact that he buys at a judicial sale of all significance whatever; thus destroying the doctrine that he buys at his peril, and takes, not the estate the record and paper muniments indicate the intestate held, as would a vendee at private sale, but the interest only which was so held in point of extraneous fact. We can not subscribe to the limitation suggested; but, on the contrary, adhere to the broad doctrine announced in the authorities cited, that the purchaser at such sale gets only such right, interest or estate as resided in the intestate, the apparent title being qualified and limited by every fact or circumstance, whether *in pais* or of record, which would have constituted an outstanding equity against the decedent in his life-time; and applying this principle to the case at bar, we hold that Barton and those holding under him are estopped in like manner, and to the same extent, that Price would now be were he yet living.

We have not been inattentive to the argument for appellees against an estoppel upon Price and his privies, which proceeds on the theory that the estoppel is sought to be based on the acts of Price *as* Walker's administrator. The theory is at fault in that it is Price's conduct *as an individual* that is relied on to estop him. His averment that Walker was "seized and possessed" of the land, his report of the sale, the title-bond executed by him as administrator, and his acceptance, as such administrator, of Winston's notes—all repre-

sentative acts—have been referred to in the course of this opinion, not as going to raise up an estoppel upon him in that capacity, or upon Walker's estate, but as evidence going to prove that in that capacity he sold the land as belonging absolutely to Walker's estate, without giving notice of any individual claim of his own to it—to show his silence when the duty of speech as an individual was upon him, as a predicate for the application of that principle of law which closes his mouth, and the mouths of those claiming under him, when they would now speak; and to hold them to the aspect of things which he then wrongfully allowed to be presented to Winston, inducing prejudicial action on the part of the latter.

It may be conceded that the sale to Winston was originally inoperative to pass the interest of Walker's estate, because of the absence of jurisdictional allegations from the petition for the order to sell, and hence that neither Price, as Walker's administrator, nor any successor to him in that office, nor the heirs of Walker, would be estopped to question its validity, or to deny the claims of Winston and his privies under it. All that may be conceded without in any degree affecting the rights of the present complainant, as against those of the respondents who claim under Price. They assert no right under Walker's administrator or heirs, and their position is essentially in denial and repudiation of all rights in Walker's estate. Their position is, that they have succeeded to the right and title which Price had, as they claim, as well after as before the administrator's sale, and which were not affected by that sale because, they say, it was Walker's interest alone, and not Price's at all, which was sold, and the only interest Walker had, they contend, was the naked privilege of paying for the land, and by payment acquiring title to it. They have no right to attack the sale by Walker's administrator, because no interest they now assert, or have ever asserted, was involved in that sale, or passed by it. Whether the sale was valid or invalid can not concern them. Price originally could have attacked it, but only as the representative of Walker. Price's successor in that administration could, at one time, have drawn it in question, but only in the interest of Walker's estate. Walker's heirs, had the estate been administered as a solvent one, might likewise have had its invalidity declared. So, too, it may be that Winston could have repudiated it. But no assault has ever been made upon it from any of these sources. On the contrary, it has all along been treated by every party having the right to avoid it, as a valid sale. So far as strangers are concerned, it has been a valid sale from the first, and parties to it have been, and are

now forever, estopped to question its validity—the representa-- tives of Walker by the sale of Winston's notes and distribution of the proceeds to creditors of Walker's estate, and Winston's estate and his privies by the payment of those notes. And moreover, no representative of, or person interested in Wal- ker's estate, has ever contested, or is now contesting, the right sought to be effectuated by this bill. The sale must now be considered as valid, and as·having been so all the time. By it, and its consummation in the payment and receipt of the purchase-money, and its distribution to and retention for years by Walker's creditors, all the parties thereto are cut off from now objecting to its validity. By the conduct of Price as an individual, at this sale made by him as Walker's administrator, he and his privies are estopped to set up any individual right or claim he then had as against the present complainant.

The case is not like that of *Owens v. Slatter*, 26 Ala. 547. The interest which the administratrix in that case had as an individual, in the land which she sold in her representative capacity, was an interest conferred by law, the right of dower, and attaching to all the lands of an intestate. The presump- tion is that all men have knowledge of this interest, as all men are presumed to know the law. The opinion proceeds on this theory, and can be supported upon no other. The court, among other things, said: "If the purchaser blindly bids off the land, without inquiring whether the widow had relin- quished her dower, or consented to a sale of it, electing to take a share of the proceeds in lieu thereof, it is his folly, and he has no one to blame but himself."

Our conclusion that Price incurred an estoppel on the asser- tion of his individual rights in the land, and our views as to the effect of this estoppel upon the present holders of his title, dispose of the defense advanced on the idea that the re- spondents, who are now in possession claiming under Price, are entitled to protection as *bona fide* purchasers for value, adversely to them; and leaves for consideration the defense of *laches* on the part of complainant, and consequent staleness of the demand now asserted by the bill.

This defense is to be considered from two points of view— as respects the representatives and heirs of Walker's estate, and with reference to the purchasers from Price's estate. It may be conceded that, had twenty years elapsed from the last recognition on the part of Walker's representatives and heirs of the sale to Winston, the latter's heirs, though infants dur- ing the whole of that period, could not demand a specific en- forcement of the contract of sale. But, even passing over the fact that possession under that sale was held on the part of,

[Lindsay v. Cooper.]

or in behalf of Winston, down to the year 1870, or to within seventeen years of the filing of the bill, the sale was recognized in the most unequivocal manner by Walker's administrator as late as the year 1872, by filing the purchase-money notes as a claim against Winston's estate, by subsequently selling those notes as assets of Walker's estate, and by the enforcement of that claim, through the purchaser at said sale, against Winston's estate. Upon these uncontroverted facts, there can be no room to say that the doctrine of prescription may be invoked by Walker's estate, to defeat the right now asserted by the complainant. The fact is that that right did not accrue to the complainant until the payment of the notes, which was less than ten years before the institution of this suit, and during the greater part of this period she was an infant. It is true that Winston in his life-time, and his privies at any time after his death, might have paid off the notes, and demanded a conveyance from Walker's estate; or that, had a tender been declined, a bill might have been filed, offering to pay the notes, and praying a specific performance of the contract made with Price as Walker's administrator, as evidenced by the latter's bond for title; but no *laches* can be imputed to Winston, or those claiming under him, in failing so to do, so long as the contract was treated by Walker's representatives as a subsisting one, even to the extent of its actual enforcement against Winston's estate.

Mrs. Lindsay can not therefore be said to have lost any right against Walker's estate, by negligent delay in asserting it. Has she been guilty of *laches* which will defeat her claim against those now holding under Price individually? On considerations already adverted to, the rights of these parties can not be helped out by any reference to the title or interest of Price in the land prior to the sale to Winston. Whatever rights they have are such only as have accrued to them by their own dealings with and attitude toward the land since Price's death. What are these? The first transaction on their part, or which can be said to have taken place in their behalf, respecting the land, was in 1870. Till then they bear the relation of strangers to the subject-matter of controversy. At that time, Steele surrendered the possession of the land to Jones, as Price's administrator. It can not be successfully contended that this act of Steele had any other effect than to put Price's estate in the actual possession of the premises. There is no ground for any insistance that under his parol agreement with Winston, assuming its validity and binding efficacy upon Winston and his heirs, Steele had any authority to surrender the land to Walker's estate even, without saving

[Lindsay v. Cooper.]

Winston harmless on the purchase-money notes, and manifestly that arrangement never contemplated or authorized Steele to deliver possession to Price's administrator, or any other stranger, leaving the purchase-money notes to be paid by Winston's to Walker's estate. This surrender by Steele, therefore, stands for no more in this case than had Price's administrator casually, and without license of any body, taken possession of the land in 1870. In the aspect of the case most favorable to these respondents in this connection, the utmost that can be affirmed in this behalf is that since 1870 they have had actual adverse possession, claiming in good faith against all the world. And it is admitted that, had complainant been *sui juris* during the period of this adverse possession, her rights would be foreclosed by the ripening of the adverse holding into a perfect title. But, on the other hand, it needs no argument or authority to demonstrate that, as she was an infant at the inception of this possession, and afterwards until within three years of bill filed, no title accrued to the respondents from it as against her (Code, §§ 2613, 2624); and that, as the whole period of such possession up to the filing of the bill was less than twenty years, the doctrine of prescription has no application.

The complainant is, of course, entitled to the relief prayed against Walker's heirs. The purchase-money having been in the manner detailed paid to the administrator of his estate, and distributed to his creditors, Mrs. Lindsay has a right to demand a conveyance to her of whatever interest his estate had in the undivided third part of the land which has descended to her, regardless of the original invalidity of the sale to her ancestor.

The effect of the estoppel on Price individually was not to pass the title out of him into Winston; and that title having passed into the respondents now in possession, the operation of the estoppel on them has not been to divest the legal title out of them and to vest it in Winston's heirs, but only to prevent an assertion of it by them against the complainant, who is entitled moreover to whatever rights would have been hers had Price in fact had no title to or claim upon the land as he led her ancestor to believe.—Bigelow on Estoppel, 461 ; *Grissler v. Powers*, 81 N. Y. 57 ; *Fall River Bank v. Buffington*, 97 Mass. 498. And upon this principle, primarily she has a right to claim the conveyance of the legal title to a one-third undivided interest by those respondents in whom it is now vested, since, had the truth as to Price's want of title been as he lead her ancestor to believe it to be, she would now be entitled to investiture of it by Walker's heirs..

[Wingo v. Hardy.]

There is, however, another principle which the chancellor may be justified in applying on the final disposition of the cause, but which in the present state of the evidence as to the value of the land and its yearly rental, since it came to the possession of Barton, we are unable to apply intelligently. That principle is that estoppels are protective only, and are to be invoked as shields and not as offensive weapons. Their operation, in all cases, should be limited to saving harmless, or making whole, the person in whose favor they arise, and they should not in any case be made the instruments of gain or profit. This doctrine has been given lodgment in our own adjudications, though it appears not to be generally accepted in other courts.—*Nelson v. Kelly,* 91 Ala. 569; *Adler v. Rice et al,* 80 Ala. 357. It may be found, if the parties elect to go into that inquiry, that full equity can de done the complainant by charging the land with one third of the sum paid by Thornton in settlement of the Winston notes, with interest from the time of the payment; and that that course would involve less injury to those now in possession than to pass the title to one third of the land into the complainant, and hold respondents accountable for rents.

The decree of the chancellor is reversed, and that this aspect of the case may be further considered, if the respondents desire, the cause is remanded.

Reversed and remanded.