# Formby v. Hood.

## *Bill to Enjoin Judgment in Ejectment.*

1. *Estoppel in pais.*—When one knowingly suffers another, in his presence, to purchase property to which he has a claim or title, which he willfully conceals, he will be deemed to have waived his claim, and will not afterwards be permitted to assert it against the purchaser; but, when it appears from all the circumstances that the owner did not willfully conceal the state of the title, and that his acts and declarations were without any intention to disclaim title, or to deceive or mislead the purchaser, an estoppel does not arise.

APPEAL from Calhoun Chancery Court.
Tried before Hon. J. R. DOWDELL.
The case is stated in the opinion.

BURNETT & CULLI, for appellant, cited, *Lindsay v. Cooper*, 94 Ala. 177; 102 Ala. 236; 77 Ala. 158; 92 Ala. 468; Herman on Estoppel and *res ad.* pp. 476 *et seq.; McCravey v. Remson*, 19 Ala. 436; *Nelson v. Kelly*, 91 Ala. 573; *Henrix v. Kelly*, 64 Ala. 388; *Abrams v. Seal*, 44 Ala. 297; *Watson v. Knight, Ib.* 352; *Grace v. McKissack*, 49 Ala. 163; 7 Am. & Eng. Encyc. of Law, 12 and 20; *McAllen v. Honey*, 35 Md. 439.

D. D. McLOED, *contra*, cited, Bigelow on Estoppel, (3d Ed.), pp. 476-7, 434, 502-3, 519, 549-50-51, 538-42; *Mason v. Millbrook*, 70 Me. 57; *Rice v. Dewey*, 54 Barb. 455; *Mayo v. Cartwright*, 30 Ark. 407; *Markham v. O'Connor*, 53 Ga. 183; *Swan v. North British Co.*, 7 Hurl. N. 603; *Brigham Young v. Wagner*, 40 Utah, 764; *Edmondson v. Montague*, 14 Ala. 377; *Jones v. Cowles*, 26 Ala. 612; *Taylor v. Ely*, 25 Conn. 250; *Blake Crusher Co. v. New Haven*, 46 Conn. 473; *Gray v. Agnew*, 95 Ill. 315; 66 Ind. 468; *Hardy v. Chesapeake Bank*, 51 Md. 562; *Blair v. Wait*, 69 N. Y. 113; *Brant v. Va. Coal Co.*, 93 U. S. 327; *Davis v. Smith*, 43 Vt. 269; *Planters Ins. Co. v. Selma Sav. Bk.* 63 Ala. 585; *Townsend v. Cowles*, 31 Ala. 428; *Hunter v. Heath*, 67 Me. 507; *Rogers v. Bloget*, 121 Mass. 584; *St. Joseph Mfg. Co. v. Daggett*,

84 Ill. 556; 2 Pom. Eq. Jur. pp. 269-70-71, and 277; *Marcellus v. Dorrison*, (Tex.) 27 S. W. 929; *Cooper v. Great Falls Cotton Mill Co.*, 94 Tenn. 588; *Lake Park Ass'n v. Shartzer*, 34 Am. Dec. 638; *Porter v. Wheeler*, (Ala.) 17 So. 221.

HARALSON, J.—The appellee, Hood, derived title to the land in question from A. S. Johnson, who derived his title from James Price, deceased. The evidence is without conflict, that appellee acquired his title on the 6th of February, 1877, and that he has had possession of the property continuously from that date, until the complainant took possession, some time after the 27th May, 1895. Appellee thereafter, and in the same year, as is shown, instituted ejectment against complainant in the circuit court of Calhoun county, and on the strength of his undisputed legal title, secured a judgment for the property against him. This bill is to enjoin that judgment, and to prevent the sheriff from executing a writ of possession. The grounds upon which the equity of the bill is sought to be rested may be briefly stated.

It is averred that the heirs of James Price, deceased, offered to sell to one E. D. McClellan the property in question, and he—to employ the language of the bill— "being in doubt as to where the northern line of the tract sold to A. S. Johnson (to whom Price sold and conveyed, and from whom appellee received his deed), went to J. N. Hood, who then had possession of the same under the aforesaid deed from A. S. Johnson, and asked said Hood to show him the north line and N. E. corner of his (Hood's) said property bought from said Johnson; that said Hood showed him a point for his N. E. corner on Centre street, and his north line, and further said to McClellan, that if he would measure 50 feet south, along Centre street from the center of the railroad track, he would find his (Hood's) corner on Centre street; that said McClellan, therefore, made the measurement and found said corner; * * * that upon the said representation of said J. N. Hood as to his north line—that it was 50 feet south of the center of the railroad track—said McClellan purchased a lot from the heirs of said James Price containing the 50 feet lying between the railroad track and the Hood line, as

pointed out to him by Hood, and received a deed from said heirs," etc. It is noticeable that this deed, attached to the bill as an exhibit, is merely a quitclaim, and its consideration is one dollar, and bears date the 20th of April, 1890.

It is then shown, that about the 25th of May, 1895, complainant, who is appellant, being about to purchase the lot in question from McClellan, called on Hood, the appellee—as the averment is—"to point out to him the northern line of his James Price property, which he had purchased from A. S. Johnson, and said Hood designated to your orator his northeast corner and north line as being just where he had formerly designaed the same to E. D. McClellan;" that upon such representation he purchased the lot in question from said McClellan.

It is further averred in section 8 of the bill, that soon thereafter, complainant proceeded to erect and occupy a store room on said lot, and that appellee, who occupied an adjoining lot in conducting a mercantile business, saw and knew the complainant was building the store house under a *bona fide* claim and belief, that appellee did not claim to have any interest in said lot, and that he never informed complainant that he owned or claimed to have any interest in the same, and that after he finished and went into the possession of his store, appellee began his action of ejectment against him for the lot.

It may be here stated, that the proofs not only do not sustain the averments of this section of the bill, but abundantly establish that they have no foundation in fact. It is shown, that appellee learned that appellant had bought said lot from McClellan, the next day after the purchase, and he went to complainant's store to inform him that he owned the lot and had a deed to it; that complainant was not there, but had gone to the country, where he lived, but he made known the fact to complainant's clerk, and immediately on complainant's return he told him in person of it. It is fully established also, that when complainant began to make improvement on the lot, appellee served written notice on him, that he had a deed to the property, dated as far back as the 6th February, 1877, and since that date he had had peaceable possession of the same, and warned him that his occupation would seriously damage his in-

terest. The equity of the bill, then, in so far as it is sought to be maintained upon these last averments, may be allowed to pass from view. The only other ground to sustain it, is on the other averments stated above, that appellee, when McClellan and complainant asked him, before they purchased, to point out his northern line and his northeast corner, which he did, in such manner, as not to include this particular lot.

It is noticeable, that in the averments as to appellee's conduct with these parties, neither of them asked him if he owned and had a title to the lot; but the inquiry was, "to show    *    *    the north line and northeast corner of his (Hood's) said property bought from said Johnson." The suggestion obtrudes itself, that if complainant and said McClellan desired, in what they did, to estop appellee from afterwards setting up a title to this lot, they should have made special inquiry of him, if he claimed or had title to the property. Appellee's deed to the lot was, and had been for a long time before complainant bought, recorded in the office of the probate court, and he had been in possession for many years. Moreover, the consideration McClellan paid for the lot —one dollar—and his quitclaim by the heirs of Price, which was also of record, indicated that he and they had some notice or information that led them to suspect the validity or value of the title. For some reason, certainly, it was regarded by them as of inconsiderable and merely nominal value.

When it comes to the proofs, apart from the allegations of the bill, it is to be admitted they are in conflict. Appellee denies that he pointed out his northern line and northeast corner, in the manner testified to by McClellan and complainant, and of which the latter had some corroborating evidence. But these conflicts are reconcilable. This lot is a part of the strip within 50 feet south from the center of the track of the road, which ran parallel with its entire length. The company had not yet acquired this space, but it was open to acquisition by condemnation or otherwise, whenever the company sought to acquire it. The proofs indicate that it was generally understood the company might need the property, and any occupancy which looked to depriving it of that right might be looked on with disfavor. It was natural, therefore, for parties owning property abut-

ting the railroad, to come to regard their lots, as to their boundaries, as extending to within 50 feet of the center of the railroad track, giving in their own minds silent recognition to the railroad's right of way. So, the appellee, if interrogated as to the northern line of the lot he purchased from Johnson, as complainant contends he was, but which he denies, might well have said that its northern boundary and northeast corner would be 50 feet south from the center of the track of the road, without any intention of disclaiming ownership of and title to the 50 feet strip, and without intending to deceive or mislead complainant and McClellan as to his title. We cannot conclude, under the allegations of the bill and of the proofs, that defendant, Hood, willfully concealed from said parties the state of his title. We think there was a misunderstanding between them as to this matter. The law is well settled, "that when one knowingly suffers another, in his presence, to purchase property to which he has a claim or title, which he willfully conceals, he will be deemed under such circumstances to have waived his claim, and will not afterwards be permitted to assert it against the purchaser."—*Lindsay v. Cooper,* 94 Ala. 170, 177, and the numerous authorities there cited. That doctrine, however, is without application under the facts of this case, to estop the appellee from claiming title. Such was the conclusion of the learned chancellor, and his decree must be affirmed.

Affirmed.